# Byars *v.* Stubbs.

*Bill in Equity for Specific Performance of Contract for Sale of Lands.*

1. *Specific performance refused, because of suppression of material facts.* The specific performance of an agreement giving an option to buy an interest in lands was refused in this case, because it appeared that the defendant, the owner of the land, who lived one hundred miles distant, wrote to the complainant, who lived in the immediate neighborhood, offering to pay him, if he would effect a sale, whatever sum he could realize over and above $500; and that the complainant, not replying to the letter, went in person to see the defendant on the next day, and procured the option to purchase at the price of $500, not disclosing the fact that the price of lands in the neighborhood was enhanced by the formation of a local corporation for speculative purposes.

APPEAL from the City Court of Birmingham.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 6th April, 1887, by James T. Stubbs, against Thomas J. Byars, and sought the specific performance of an agreement in writing, by which the defendant gave the complainant an option to become the purchaser of his interest in a certain tract of land near Birmingham, containing about 120 acres. The writing, a copy of which was made an exhibit to the bill, was dated November 22d, 1886, signed by the defendant, and in these words: "By this agreement, I propose selling to J. T. Stubbs four and two-thirds in the following described real estate," describing two parcels of eighty and forty acres respectively, "and also my mother's life-time right in said lands, for and in consideration of the sum of $500, to be paid by the 15th December, 1886. By this agreement, if the land is not sold by the 15th December, 1886, this obligation is null and void." The bill alleged the complainant's acceptance of the offer, within the time specified, his tender of the $500, and the defendant's refusal to accept it. The court overruled a demurrer to the bill, and, on final hearing on pleadings and proof, rendered a decree for the complainant; which decree is here assigned as error.

MARTIN & MCEACHIN, for appellant.—(1.) A mere offer to sell may be withdrawn at any time before acceptance.

[Byars v. Stubbs.]

Waterman on Spec. Performance, § 200, and authorities cited on page 268; also, § 138. The pretended contract is violative of the statute of frauds.—Code, § 1732. It was in no sense a contract, but a mere proposition to sell by a certain time, and was never accepted according to its terms.—*Flinn v. Barber*, 64 Ala. 193. (3.) If a valid contract for any purpose, it will not be specifically enforced in equity, because it was wanting in good faith on the part of complainant, and would work great hardship and oppression.—*Irwin v. Bailey*, 72 Ala. 471; *Derrick v. Monette*, 73 Ala. 75; *Carlisle v. Carlisle*, 77 Ala. 75; *Moon v. Crowder*, 72 Ala. 79; Fry on Spec. Performance, 286; Pomeroy on Contracts, § 172; *Lawrence v. Butler*, 1 Sch. & Lef. 13.

W. M. BROOKS, and J. M. VAN HOOSE, *contra*, cited *Linn v. McLean*, 80 Ala. 360; *Moses v. McClain*, 82 Ala. 374; 8 Wall. 564; Waterman on Spec. Performance, §§ 134, 137, 138, 179.

CLOPTON, J.—The proposal of defendant to sell complainant the land in controversy, was in writing, and is plain and certain in its terms. It may be regarded as a continuing offer to sell, not being revoked, until the expiration of the time allowed complainant in which to accept and comply with the conditions of sale. If accepted by him, in accordance with the provisions of the proposal, it became a completed contract of sale, mutually obligatory; specific performance of which would be decreed, if it possesses all the essential elements and incidents, as a matter of course.—*Linn v. McLean*, 80 Ala. 360. But the right to specific execution is not absolute, and a decree therefor does not necessarily follow, though the contract may be plain and certain in its terms, and may be obligatory on both parties. Its enforcement rests on the sound discretion of the court, a judicial discretion, to be exercised according to the established principles of equity. An agreement may be valid at law, and there may not be sufficient grounds for its cancellation in equity; and yet, upon a fair and just consideration of the attendant and collateral circumstances, and sometimes of subsequent events, the court will abstain from its enforcement. An essential element is, that the contract must be fair, just and reasonable in all its provisions, and its specific performance must be exempt from hardship or injustice to either of the parties. The court will refuse to enforce the

contract, if it be founded in mistake or surprise, or is obtained by any sharp practice, trickery, or undue advantage of position, or by non-disclosure of material facts known by one party, and unknown to the other; or is affected by any inequitable feature.—*Cowan v. Sapp*, 81 Ala. 525; *Hesse v. Briant*, 6 DeG., M. & G. 623. In 2 Pom. Eq. Jur. § 905, the author states the doctrine as follows: "The suppression of a material fact, or the failure to communicate a material fact by the vendor, without any purpose of deceiving or misleading the other party, and even without having himself any knowledge of the fact, while not affecting the validity of the agreement at law, and not being sufficient ground for its cancellation in equity, because not fraudulent, may still render the agreement so unfair, unequal or hard, that a court of equity, in accordance with its settled principles in administering the remedy of specific performance, will refuse to enforce the contract against the party who was misled."

In the view we take of this case, we do not deem it necessary to consider and decide, whether complainant accepted the proposal, and tendered the purchase-money within the time limited, or whether defendant refused to accept it and make the deed; as to which matters there is much conflict in the evidence. We prefer to rest our decision on the application of the foregoing principles to the case made by the evidence, as to which there is no serious disputation. The complainant lived in the vicinity of the land, which is situate in Jefferson county, and the defendant resided in Franklin county, about one hundred miles distant. In this respect, the complainant had great advantage of situation, and of opportunity of knowing the circumstances which materially affected the value of the land. The first information which complainant received of the amount of the defendant's interest, and the price at which he was willing to sell, was through a letter written by the latter in November, 1886, requesting complainant to sell his interest, and offering to pay for his services all he could get over five hundred dollars. This communication and authority to sell implied confidence. Without replying to the letter, or attempting to ascertain whether the land could be sold, and at what price, the complainant, the morning after the reception of the letter the evening previous, went to see the defendant in person at his home in Franklin county, and procured from him the agreement to sell complainant his interest in the land for five hundred dollars, to be paid by December 15, 1886; and if not

[Byars v. Stubbs.]

sold by that time, the agreement to be void. According to complainant's own testimony, his sole business and purpose in going to see defendant was to obtain an option on his interest in the land. Why this great haste to procure an option, rather than undertake the agency to sell? The question is readily answered by the surrounding circumstances. Prior thereto, a company, called the East Lake Company, had been organized, and had commenced making purchases of land for development in that vicinity, and was producing what some of the witnesses call "a sort of a boom." This proceeding materially affected the value of the lands in the neighborhood; they began to increase in value, and continued to rapidly enhance up to the time in which the option of complainant was to be exercised, as specified in the proposal to sell. The evidence as to the value of the land greatly differs, the estimates of the witnesses ranging from ten to fifty dollars per acre. It is manifest, however, that the surrounding circumstances were such as would largely influence an owner of land in that section in determining whether he would sell, and in fixing the price at which he would be willing to sell. It is true, the relation of principal and agent was not consummated between complainant and defendant; but the proposition of the latter to employ the former, as agent to sell the land, placed them in a relation, each to the other, which demanded open and fair dealing. We do not mean to say, that there was fraud or trickery in procuring the option; what we decide is, that under the circumstances, the complainant should have disclosed to defendant the material facts. Instead of so doing, he avails himself of the information communicated by defendant's letter, hastens in person, and obtains an option running through three weeks, without paying any consideration therefor, and which did not bind him in any respect, and suppressed the facts which had so materially affected the present and prospective value of the land; for he testifies that he made no representation of its value. In this, he took an undue advantage of his position and knowledge. The contracting parties did not stand on an equality; and the defendant entered into the agreement in ignorance of the facts. Such being the nature of the contract, and the circumstances under which it was made, a court of equity, in the exercise of its discretion, should abstain from granting a specific performance, and leave complainant to his legal remedies.

The decree is reversed, and a decree here rendered dismissing the bill.

Reversed and remanded.

