Timothy Pahl, Appellant, v. Tri-City Railway Company, Appellee.

**COMPROMISE AND SETTLEMENT:** Conclusiveness. A compromise and settlement of a personal injury claim, without fraud, misrepresentation, concealment, or other misleading incidents, is final, even though the future develops the fact that the injured party was more severely injured than either he or his physician thought at the time of the settlement.

*Appeal from Scott District Court.*—F. D. Letts, Judge.

March 9, 1921.

Action for damages predicated on the alleged negligence of the defendant railway company, resulting in injuries to plaintiff. A verdict was entered in favor of defendant, on motion of the defendant, at the close of plaintiff's testimony. Judgment entered, taxing costs to plaintiff. Plaintiff appeals.—*Affirmed.*

*Ely & Bush,* for appellant.

*Lane & Waterman* and *Cook & Balluff,* for appellee.

De Graff, J.—Plaintiff was riding as a passenger on defendant's street car, and, in attempting to alight therefrom, fell from the car, and was severely injured. The fall caused an impacted fracture of the surgical neck of the femur of his right leg.

It is alleged that the defendant company, in operating its line in the city of Davenport, Iowa, permitted the rear vestibule of the street car where the plaintiff was riding to become overcrowded with passengers; that the conductor failed to open the door of the car wide enough to allow plaintiff to alight in safety, and failed to place the step of the car in a proper position for plaintiff to step thereon, in leaving the car.

Defendant answered, denying the material allegations of the petition, and, as a separate defense, pleaded that, on the 29th day of April, 1918, it made a full settlement with the said plaintiff of all claims or demands which he might have against the defendant, then and thereafter, growing out of or in any way connected with the accident or injuries complained of, and that, on said date, plaintiff signed, executed, and delivered to the defendant a written instrument of satisfaction and release, whereby, in consideration of the agreements contained in said instrument, the defendant paid to the plaintiff the sum of $1,040 in cash, and in addition did assume and pay the bill of Dr. D. G. Kreul for medical services rendered by him to said plaintiff in connection with plaintiff's injuries.

Plaintiff, in reply, by way of confession and avoidance, admitted that he received from the defendant the sum of $1,040 in agreed settlement of certain injuries received by him in the accident in question, and that he executed the written release, but alleged that the said settlement and release were obtained and executed by and under a mutual mistake of facts, in this, to wit: that at the time of the accident in question plaintiff suffered an impacted fracture of the surgical neck of the femur; that he was informed by his physician, shortly before said settlement and release, that the bones of his leg had healed and were all right, and that he would have no further difficulty with them, that the muscles of his leg were weak, but would be all right as soon as he would exercise to strengthen them, and that he would be as well as ever by fall; that plaintiff relied upon said statements of his physician; and that similar statements were made by said physician to the claim agent of the defendant company; and that, acting upon the mistaken belief that the bones of his leg had healed and were all right, plaintiff and the claim agent entered into said settlement. Plaintiff did not return the moneys

received by him in settlement, nor did he make tender thereof to the defendant company.

Defendant's motion for a directed verdict in its favor is based primarily on three grounds: First, that the evidence fails to show negligence on the part of the defendant; second, that the plaintiff failed to establish his freedom from contributory negligence; third, that, by reason of the release and settlement entered into between plaintiff and defendant, the plaintiff has lost any right which he might previously have had to maintain the action, and that there is no evidence tending to prove a mutual mistake of the parties in making the settlement.

The conclusion which we announce on the third ground of defendant's motion makes it unnecessary to discuss or elaborate on the alleged negligence of the defendant or the negligence of the plaintiff, if any, contributing to the injury received by him.

*Did the settlement and release absolve the defendant company from all and further liability in the premises?*

Plaintiff was injured December 8, 1917, and settlement and release were made April 29, 1918. It appears that the claim agent of the company first talked with plaintiff three or four weeks after the accident, and had several conversations with him before the final settlement was made. It is not alleged, nor is it shown, that any fraud was practiced or that any inducements or misrepresentations were made on the part of the company through anyone in securing the settlement; and, at the time of settlement, the nature or extent of his injuries or the likelihood of his recovery or the liability of the company for the injuries sustained were not discussed. The plaintiff's testimony shows that the claim agent first offered him $600; that the plaintiff then talked with the rector of the Episcopal Church, where plaintiff was employed as janitor, and that he also talked to one of the vestrymen concerning the advisability of accepting the proposition. Plaintiff asked the claim agent to wait a little while, until he knew how the injury to the leg developed. No objection was made by the agent; and later, in another conversation, the agent told the plaintiff to mention the sum that he wanted, to which plaintiff replied, "That is a pretty hard proposition for me to do, the shape I am in; can't you wait a little bit?" The claim agent informed plaintiff that the street car company

wanted to settle, and it was then that the plaintiff's wife named the sum of $1,500. The agent stated that the company would not give that much.

In the next conversation, the agent offered $1,000 in settlement. Plaintiff made no reply to this, but his wife said she was "going to take it." It was then that the agent gave plaintiff a check for $1,040, and presented a receipt for that amount of money and a release, which were signed by the plaintiff. The record does not contain a copy of this release, but there is no dispute as to the recitals therein.

At the time plaintiff signed this release and receipt, the claim agent told him that, "if he signed those papers, he would have no further claim against the street car company." It is further shown that plaintiff was not certain that he told the claim agent, at the time of the settlement, what the doctor had said about the bone and about his condition. It is not disclosed that plaintiff's physician ever talked with the agent. Plaintiff's wife was certain that her husband told the claim agent what the doctor said about the leg, but, at that time, it was apparent to the claim agent that the plaintiff had not fully recovered.

"He was not walking except with crutches. He could not stand on the leg at all. He could not walk on that leg, at the time Dr. Kreul told him the bone was all right."

It is well settled that compromises and settlements will not be disturbed for any ordinary mistake, either of law or of fact, since their very object is to settle disputes without judicial controversy. In the absence of fraud, misrepresentations, concealment, or other misleading incidents, a compromise into which parties voluntarily enter must stand and be enforced, although the final issue may be different from that which was anticipated.

"In such classes of agreements and transactions, the parties are supposed to calculate the chances, and they certainly assume the risks, where there is no element of bad faith, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual or constructive fraud." 2 Pomeroy on Equity Jurisprudence (4th Ed.), Section 855.

Plaintiff herein signed the release with full knowledge of what it contained, and no claim is made that he did not under-

stand its terms and provisions. It cannot be said that there was any mistake inducing the compromise. Both parties were innocent, and acted in good faith. Neither can it be argued that the payment was made and the release signed for a certain known injury. It was a settlement made to avoid litigation, and subsequently plaintiff discovered that his own doctor was mistaken as to the character of the injury which plaintiff received.

Where parties knowingly and purposely make an agreement to compromise and settle a doubtful claim whose character and extent are conditioned upon future contingencies, such settlement may not be avoided simply because the event happened quite differently from the expectation, opinion, or belief of one or both of the parties. *Seymour v. Chicago & N. W. R. Co.,* 181 Iowa 218. In the opinion in the *Seymour* case, this language is approved:

"The subsequent discovery by one giving such a release that he was worse hurt than he had supposed, would not, in and of itself, be ground for setting aside the settlement or limiting the release."

The cases relied upon by appellant are clearly distinguishable, on the facts and on principle, from the case at bar. In *Malloy v. Chicago G. W. R. Co.,* 185 Iowa 346, the representations made as to the condition of the plaintiff were made by the physician of the defendant company, and, relying upon those statements, plaintiff went to the claim agent and made a settlement. This is also true in *Houston & T. C. R. Co. v. Brown,* (Tex.) 69 S. W. 651.

In *Reddington v. Blue & Raftery,* 168 Iowa 34, it appears that there was written into the release an agreement which was not intended nor, in fact, made by the parties thereto; and, in an instruction which was approved, the jury was told:

"And it must appear that the agreement as signed did not contain the real, actual, and intended agreement of the parties."

In *Owens v. Norwood-White Coal Co.,* 157 Iowa 389, false statements were made to the plaintiff by the claim agent of the defendant company, and the case was decided on the theory that a contract of settlement is vitiated for fraud and inequitable advantage by either party thereto.

Other cases cited sustain the elementary principle of law that

a settlement secured through fraud or misrepresentation may be avoided. *Haigh v. White Way Laundry Co.,* 164 Iowa 143; *Rauen v. Prudential Ins. Co.,* 129 Iowa 726.

In cases in which the relation of employer and employee exists, the employer may well be deemed the dominant party, and the confidential relation between such parties will cause a court to scrutinize more closely a compromise settlement between them than in cases where the parties are entire strangers.

Plaintiff herein was in a better position to know his own condition than the defendant; for he relied, not only upon his own judgment in the matter, but on the statements of his own physician. Under the record, the defendant company, through its claim agent, had no means of knowing these facts, except as plaintiff may have disclosed same at the time of settlement. Both parties knew that plaintiff suffered a fracture of the surgical neck of the femur. There was no attempt to compute the actual damages sustained by the plaintiff, such as loss of time, pain and suffering, or any other element that is ordinarily considered in such cases. It was a lump sum settlement, tendered to the plaintiff and accepted by him. The settlement was fairly made, and, under the principle of well-considered cases, it should not be disturbed.

The trial court was correct in sustaining defendant's motion for a directed verdict, and the judgment entered is—*Affirmed.*

Evans, C. J., Weaver and Preston, JJ., concur.