LANDAU

v.

ST. LOUIS PUBLIC SERVICE CO.

No. 29008.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

Motion for Rehearing or to Transfer
to Supreme Court Denied
May 17, 1954.

Hullverson & Richardson, William L.
Mason, Jr., St. Louis, for appellant.

Lloyd E. Boas, St. Louis, for respondent.

BROADDUS, Special Judge.

Plaintiff, Gay D. Landau, is the wife of
B. Sherman Landau, a highly respected
member of the Bar. She appeals from the
judgment of the Circuit Court dismissing
her suit and directing her to comply with
the terms of a compromise. The appeal
was taken to the Supreme Court and that
court, on account of the amount involved,
transferred the cause to this court.

Plaintiff's petition in the instant case
(cause No. 56737 in the Circuit Court)
sought damages for personal injuries al-
legedly sustained in a collision between her
automobile and defendant's street car in the
City of St. Louis, Missouri, on June 9, 1950.
Defendant's answer pleaded that plaintiff
had instituted a prior suit on the same cause
of action, and that after said prior suit had
been assigned out for trial it was settled for
the sum of $1,750, the settlement agreement
having been arrived at in open court. The
answer further alleged that plaintiff "and
her husband" had failed and refused to per-

form the agreement, and by way of relief defendant prayed that the court order "plaintiff" to specifically perform the contract by executing a proper release and accepting $1,750 in settlement of her claim. The parties filed motions for a separate trial of the equitable defense, and on such separate trial of the equitable phase of the case the Court, as we have stated, found in favor of defendant and ordered plaintiff to specifically perform her contract.

Plaintiff's petition in the instant case is identical with the one filed in the original suit (cause No. 44,761). In the first case plaintiff's counsel was Mr. Harvey B. Cox, and Mr. Lloyd E. Boas represented defendant.

On June 2, 1952, the original case was assigned out for trial in Division No. 7 of the Circuit Court presided over by Hon. Waldo C. Mayfield. What took place after the case reached Division No. 7 was thus stated by Mr. Cox from the witness stand: "We negotiated concerning settlement in the case and there was an offer of settlement made by you (Mr. Boas) on behalf of the defendant and after that I called Mr. Sherman Landau, the husband of Mrs. Landau, to get his approval and he advised me he left the matter entirely to me. I conferred further with Mrs. Landau and she authorized me to agree to the settlement. * * * I advised him (Mr. Landau) of the exact amount of the offer of settlement in Mrs. Landau's case."

At the time of the compromise both parties had fully prepared for trial, and announced "ready" and a jury panel was being placed in the box. Mr. Boas testified that defendant had gone to considerable trouble and expense in preparing for trial and had witnesses subpoenaed and waiting to testify; that one witness was then available who has since left the City. On the strength of the settlement agreement Mr. Boas agreed to pass the case, discharged witnesses, and charged defendant a fee for the preparation of the case. A written memorandum was signed by the attorneys for both parties and filed with the clerk. That memorandum provided that "Cause

passed for settlement." Leave was granted to so pass the case and the memorandum was also signed by Judge Mayfield.

After passing the case for settlement defendant's attorney returned to his office and had releases and stipulations for dismissal prepared. A form release was used and Mr. Landau's name was inserted as the husband of plaintiff. These release forms were mailed to Mr. Cox, plaintiff's attorney, on the evening of the following day, June 3, the envelope in which they were contained bearing the postmark of 7:00 p. m. On the morning of June 3, before the releases were received by Mr. Cox, Mr. Landau appeared at Mr. Cox' office and told Mr. Cox the settlement wouldn't go through because "he felt like it wasn't a sufficient amount." What Mr. Cox' reaction to this was is best shown by the following: "The Court: Well, when he came to your office and told you, Mr. Cox, he didn't think the sum of $1750 was enough what did you say to him? The witness: My best memory is that I told him I had used my very best judgment in the negotiations after talking with him and talking with Mrs. Landau, and as I felt that way about it I would have to withdraw from the litigation because it would be embarrassing for me to stay in it. Now, that is, in substance, almost accurately, if not exactly, what was said." Six days later Mr. Cox did withdraw from the case.

Thereafter, Mr. Landau filed a motion to have the order of June 2, passing the case for settlement, set aside, because "it is now apparent that this cause cannot be terminated through compromise * * *." A hearing on this motion was set for July 10, 1952, and on that same day plaintiff filed a voluntary dismissal of her action without prejudice. During this time Mr. Landau had addressed two letters to defendant's counsel in which he said that the "settlement proposal" and "your client's offer" were unacceptable because "inadequate."

Mr. Landau's testimony was that he rejected the settlement because it was, as far as he was concerned "unacceptable." Another reason was that the release required the release of all claims and demands of all

kinds, and he could not sign it because he had a "large number of claims against the Public Service Company" in which he had an interest. Mr. Landau admitted that he told Mr. Cox "to use his own judgment in settling Mrs. Landau's claim." He also admitted that he told Mr. Cox that he was dissatisfied with the settlement of his wife's claim before he saw the releases. He said: "I told him that because I wasn't satisfied with the amount."

The plaintiff, Gay D. Landau, is highly educated; has a Master's Degree. While on the stand she was asked: "Did you understand that you were to be paid $1750 on your claim? A. Well, as I understood, Mr. Cox said the sum of $1750, yes sir. Q. And you understood that was to be paid by the Public Service Company to settle your claim? A. Yes, sir. Q. And you authorized Mr. Cox to accept that? A. Yes, sir." Mrs. Landau also testified that in her opinion, Mr. Cox had adequately represented her and that she did not charge him with any dereliction of duty. On cross-examination, conducted by her husband, she stated that she was nervous and upset and would not have accepted the settlement if she had not been under the impression that Mr. Landau had approved that specific figure.

At the close of the testimony of Mr. Cox, defendant's counsel asked leave to strike from the equitable defense the phrase, "and her husband, B. Sherman Landau", and all references to plaintiff's husband. That application was allowed by the Court.

At the conclusion of the evidence the Court announced: "Gentlemen, after listening to this testimony and bearing in mind the standing of Mr. Harvey Cox as a member of this Bar, I can only conclude that in his settling the plaintiff's cause of action * * * he did so because he felt that it constituted a fair and just settlement of the plaintiff's cause of action. The plaintiff through her attorney agreed to and did settle her cause of action in the sum of $1750. I, therefore, find that in equity and in good conscience the plaintiff should execute releases of her claim alone * * *."

Thereupon Mr. Landau requested separate findings of fact and conclusions of law. In accordance with that request the Court found that plaintiff had previously instituted a prior suit on the same cause of action; that said prior suit was assigned for trial to Division 7 of the Circuit Court on June 2, 1952; that plaintiff was represented by Mr. Harvey B. Cox, and plaintiff does not claim he was without authority, or that he did not properly represent her; that the parties announced ready for trial after defendant had been put to the expense of preparing for trial and arranging for witnesses; that while the jury was being placed in the box a settlement offer of $1,750 was made by defendant and submitted to plaintiff in open court by Mr. Cox; that plaintiff, with full and complete knowledge, agreed to accept the offer, so advised Mr. Cox and authorized him to enter into a settlement agreement; that Mr. Cox did enter into a settlement agreement, by the terms of which defendant was to pay $1,750 in full satisfaction of the cause of action which plaintiff attempts to prosecute in this action; that by a memorandum, signed by the attorneys and approved by the Court, the cause was "passed for settlement"; that the jury was then discharged with a full and complete understanding between the parties that the case had been settled and that releases and a stipulation for dismissal would be signed by plaintiff; that plaintiff failed, neglected and refused to comply with the settlement agreement and has refiled the suit; that defendant is and has been ready, willing and able to comply with the agreement; that defendant relied on the settlement agreement and waived its right to try the case before the Court and jury then available, and if compelled to try the case defendant would incur considerable expense and inconvenience.

The Court then concluded that the contract of settlement should be specifically enforced.

Plaintiff's first contention is that her attorney and defendant's "did not have the same understanding of the subject matter of the proposed settlement agreement and

there was no meeting of minds concerning such subject matter. Consequently, there was no contract of settlement."

There is not a shred of testimony in the record upon which to base this contention. Mr. Cox testified: "My best memory is there was no word spoken concerning anything about Mr. Landau's claim at any time; the conversation concerned Mrs. Landau's case. * * * To be clear, I don't think at any time while I was ever representing Mrs. Landau or even during negotiations was there ever any discussion about Mr. Landau's claim, himself, whatever it might have been. I always represented Mrs. Landau and handled her matter."

And when Mr. Boas was on the witness stand he was asked by Mr. Landau: "Did he (Mr. Cox) ever tell you that he was settling anything beyond that claim that was in the courtroom at that time? A. No, Mr. Landau. Q. Now, was there ever any discussion between you and Mr. Cox of settling every claim which her husband had, all claims of whatsoever kind that her husband against the Public Service Company from the beginning of time to and including the date hereof? A. No, there wasn't."

Plaintiff's brief says: "It is possible that Mr. Boas may have *assumed* that the compromise negotiations encompassed the husband's claim arising out of the casualty in question * * *." It concedes that "there was no direct testimony to that effect."

■ From the foregoing it is clear that plaintiff's argument "that there was not in this case such 'meeting of the minds of the contracting parties regarding the same thing, at the same time,' as was required to create a contract" is wholly without merit.

Plaintiff's next point is: "If the parties had agreed upon a settlement of $1750 for the wife's pending suit only, such agreement was repudiated and rescinded by the action of defendant's attorney in demanding execution of releases covering claims beyond the then pending suit."

■ The undisputed evidence shows that Mr. Landau came to the office of Mr. Cox "early in the morning" of June 3rd and told Mr. Cox that the "settlement was not to be consummated." This was *before* either Mr. Cox or Mr. Landau knew what the releases contained, as they were not mailed to Mr. Cox until late in the evening of that day. Mr. Landau, not defendant, sought to rescind. And his only reason for so doing was that the amount was "inadequate."

■ The weakness of plaintiff's entire position is that what took place in open court is treated as a mere "offer" or "settlement proposal", when in fact, it was a *completed contract*. Neither party had a right to repudiate it.

The case of Fair Mercantile Co. v. Union-May-Stern Co., 359 Mo. 385, 221 S.W.2d 751, 755, is determinative of the instant case. There our Supreme Court affirmed a decree of specific performance in a case very similar to the present one. There the parties had started the trial of a case and during trial a settlement was negotiated. A memorandum reciting that the case was "passed for settlement" was filed of record and the jury was discharged. The plaintiff there refused to execute a release and a stipulation for dismissal. In a subsequent proceeding before the learned chancellor who heard the instant case, a decree of specific performance of the settlement contract was ordered. On appeal that judgment was affirmed. In holding that such a stipulation and agreement in Court was binding the Court said:

"The stipulation was not made until the trial court had assured itself that it was fully understood by both the Paulls. Such a stipulation should be as binding as a written contract; indeed, it is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court. * * * 'An oral admission or agreement, made in open court for the purpose of the trial or hearing, and preserved in the record, has the same binding force and effect as a written, signed stipulation.'

"Appellant places some reliance on the fact that following the entry of the stipula-

tion the further entry was made: 'Passed for settlement.' We do not regard this as an indication that the contract of compromise was incomplete. The terms of the agreement were definite, the promise of one party was consideration for the promise of the other and the *contract* was complete, although things remained to be done under it. This was not a mere *offer* to compromise any more than a written agreement to purchase real estate is only an offer because the execution and delivery of the deed and the payment of the purchase price are to be performed in the future."

Other cases which support our holding are Kahn v. Brunswick-Balke-Collender Co., Mo.App., 156 S.W.2d 40 and Allen v. Fewel, 337 Mo. 955, 87 S.W.2d 142.

The judgment is affirmed.

ANDERSON, P. J., and BENNICK, J., concur.