120 So.2d 704

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY**

v.

**W. E. SOLCHENBERGER.**

**6 Div. 81.**

Supreme Court of Alabama.

May 19, 1960.

538

Gibson & Gibson, Lange, Simpson, Robinson & Somerville, White E. Gibson, Jr., and Wm. L. Clark, Birmingham, for appellant-petitioner.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellee.

COLEMAN, Justice.

This is an appeal from a decree of the circuit court denying relief in equity and retransferring the cause to the law side there to be tried on the merits. Appellee has filed a motion to dismiss the appeal. Appellant has filed also in this court an original petition for mandamus in the alternative and seeks to review the decree complained of by that procedure if said decree will not support an appeal.

A decree retransferring a cause from equity back to law where the cause commenced will not support an appeal and the appeal is dismissed, Jones v. Wright, 220 Ala. 406, 125 So. 645; but such a decree may be reviewed by an original application for mandamus, Ex parte Robinson, 244 Ala. 313, 13 So.2d 402, notwithstanding the statutory provision, § 155, Title 13, Code 1940, providing for review of such retransfer order on appeal from the final judgment because the statutory review does not afford an adequate remedy, Ex parte Louisville & N. R. Co., 211 Ala. 531, 100 So. 843. We will, therefore, on the petition for mandamus review the decree here complained of.

### On the Merits.

The appellee brought an action at law against appellant under the Federal Employers' Liability Act, Title 45, § 51, U.S. C.A., for personal injuries sustained by appellee while he was employed by appellant as a switchman. We will refer to appellee as plaintiff and to appellant as defendant.

After the action was begun, the parties engaged in negotiation of a settlement. Defendant contends that a binding agreement to compromise and settle the controversy was entered into by the parties. Plaintiff contends that no binding agreement had been entered into.

On stipulation of the parties and agreement to dismiss another suit then pending in the Federal District Court of Pensacola, Florida, between the same parties, the Circuit Court of Jefferson County ordered the instant cause transferred to equity for the sole purpose of determining whether or not plaintiff is bound to consummate the alleged agreement to settle. The transfer order provided that from decision on that question either party should have the right of appropriate review.

After transfer, defendant filed its bill in equity averring that plaintiff had agreed to settle for $7,500 and dismiss the action but had later refused to execute the agreement. The prayer is for specific performance of the agreement.

Plaintiff filed a demurrer to the bill but the demurrer apparently was not ruled on. Plaintiff later filed an answer. Testimony was taken ore tenus.

The cause was submitted on bill of complaint, answer, testimony taken orally, and exhibits. Decree was rendered denying relief to defendant and retransferring the cause to the law side for trial on the merits. Defendant here seeks review of this last decree.

No question is raised as to defendant's right to seek relief in equity by bill for specific performance of an agreement to settle an action at law under the circumstances of the instant case. Plaintiff (appellee) states in brief:

"* * * There is adequate authority for enforcing a settlement agreement in a proceeding such as this. In fact, a recent annotation contains a collection of cases on the subject. 48 A.L.R.2d 1211. We do differ with appellant, however, in the application of existing law to this case."

Note 1, 48 A.L.R.2d 1211, states that the discussion "* * * does not include a consideration of the right to compel execution of the compromise agreement in the action which is settled thereby." Landau v. St. Louis Pub. Serv. Co., 364 Mo. 1134, 273 S.W.2d 255, 48 A.L.R.2d 1200, which is the subject of the annotation, appears to be a case in which specific performance of a compromise agreement was granted in the action which was settled by the agreement. In the Landau case, supra, however, it appears that the settlement agreement had been entered into prior to the filing of the petition or complaint in that case. Landau v. St. Louis Pub. Serv.

Co., Mo.App., 267 S.W.2d 364. In the instant case, the alleged settlement agreement was entered into on September 27, 1955, which was more than thirteen months after the complaint at law was filed August 10, 1954. This proceeding in equity to require specific performance of a settlement agreement made after action was commenced is unique in this jurisdiction so far as we are advised. Since, however, no objection is made to the procedure here followed, we are not required to decide whether the remedy in equity is or is not appropriate. We lay that question to one side and proceed to consider defendant's right to specific performance on the merits. Both parties invite us to do so and lack of jurisdiction is not apparent. The principle defendant seeks to invoke is not unlike the principle under which equity courts will enjoin an action at law where defendant has an equitable defense unavailable in the law action. Boone v. Byrd, 201 Ala. 562, 78 So. 958; Ex parte Finley, 246 Ala. 218, 20 So.2d 98.

The essential averments of the bill are that plaintiff brought his action at law as aforesaid; that the case was set for trial October 3, 1955, and defendant had prepared its case and arranged for witnesses to attend trial; that thereafter defendant submitted offer to pay $7,500.00 and costs if plaintiff would execute release and dismiss the action; that on September 27, 1955, plaintiff agreed to accept the offer of settlement as evidenced by letter written by plaintiff's attorney to defendant's claim agent as follows:

"September 27, 1955

"* * * We have just been advised by Switchman Solchenberger that he has decided to accept the offer of L&N RR Co. to settle his case for $7,500.00 with the understanding that the settlement is to be consummated by release containing the following provision, viz:

"'The seniority rights of W. E. Solchenberger are not impaired or

prejudiced by this settlement and release.'

"It is the desire of Switchman Solchenberger that all of the proceeds of the settlement be allocated to damages, that is to say, factors other than wages, so that there will be no tax due or payable on any portion of the proceeds of settlement.

"The following Order will be entered in Jefferson Circuit Case Number 32372–X, being the case of W. E. Solchenberger, Plaintiff, v. L&N RR Co., Defendant, viz: 'On Motion of Plaintiff, case dismissed and, by agreement, Defendant taxed with all costs of Court.'

"If you will forward to us the release, we will have it properly executed by Switchman Solchenberger.";

that after receipt of letter, defendant cancelled plans for attendance of witnesses; that when the case was called October 3, 1955, the presiding judge entered the following order:

"Continued for order case having been settled.";

that on October 13, 1955, plaintiff refused to perform and continues to refuse to perform the settlement agreement, but defendant is and has been at all times since September 27, 1955, ready, willing, and able to perform.

The answer avers that action was filed and the letter of September 27, 1955, written as averred in the bill; that it was agreed that plaintiff "would execute a release of any and all damages claimed" in the action and on execution of release would dismiss the action; that the presiding judge entered the order aforesaid on October 3, 1955, but that neither plaintiff nor his attorney was present when the case was called October 3, 1955; that plaintiff's attorney then was engaged in trial of another case and that said order was entered without the knowledge or consent of plaintiff or his attorney and contrary to his attorney's request to hold the case for order at a later date; that the terms of settlement alleged in the bill did not constitute all the terms and conditions of the settlement agreement; that plaintiff did decline to execute the agreement by letter from plaintiff's attorney to defendant's agent as follows:

"October 13, 1955

"* * * It will be remembered that the spirit of the proposed settlement of this case and the motivating influence on Switchman Solchenberger was for Switchman Solchenberger to return to his job with L&N RR Co. That was the sole reason for his insistence that the release that was to be executed for a recited consideration of $7,500.00 should contain the special provision to the effect that his seniority rights would not be prejudiced or impaired by the settlement and release.

"Dr. Batson and Dr. Barranco, physicians and surgeons for L&N RR Co. at Pensacola, have both testified to the effect that Switchman Solchenberger has been physically qualified to return to work as a switchman for L&N RR Co. since June or December of 1954. It was felt that since these physicians and surgeons for L&N RR Co. had qualified Switchman Solchenberger physically for work as a railroad switchman, there would be no difficulty in his returning to work for L&N RR Co. upon disposition of the existing controversy regarding his personal injury claim. However, Switchman Solchenberger informs us that on October 10, 1955, L&N RR Co. required him to submit to a further physical and medical examination by a physician at Mobile, Alabama, and that this doctor has indicated he may not qualify him for work as a switchman. This additional examination is not understood in view of the sworn testimony of the L&N doctors at Pensacola to the effect that Solchenberger

is physically qualified to work as a switchman, and it means that Switchman Solchenberger has questioned the good faith of L&N RR Co. in this matter and is inclined to believe that it is the desire and intention of L&N RR Co. to make every effort to prevent his returning to his job as a switchman for L&N RR Co.

"Switchman Solchenberger is so concerned about this development that he is unwilling to consummate any settlement of his personal injury claim without first being given the opportunity of returning to his job as a switchman and determining whether or not he is physically qualified to continue in such line of work. If allowed a reasonable opportunity to ascertain whether he is physically qualified to do the work and if he is so qualified, he is perfectly willing to compromise and settle his personal injury claim for $7,500.00 besides costs of Court. However, he is unwilling to consummate such settlement unless he has some reasonable assurance that he will be permitted to return to his job as a switchman for L&N RR Co.

"It is regretted that the developments hereinabove mentioned have resulted in loss of confidence on the part of Switchman Solchenberger, but it is believed that you will understand from this explanation why there has been such a loss of confidence.";

that plaintiff's acceptance of the offer was made under mistake as to a material fact in that plaintiff believed he was physically qualified to return to work as a switchman; that said belief was induced by the sworn testimony of two physicians employed by defendant, namely, Dr. Batson and Dr. Baranco, to effect that plaintiff was physically qualified to return to work; that if plaintiff had known he was not so physically qualified he would not have agreed to settle because his claim would have been of greater value; that the agreement to settle was entered into through mutual mistake as aforesaid as to plaintiff's physical qualification to work and thereafter defendant required plaintiff to submit to examination by a third physician whose opinion was that plaintiff was not so qualified; and that plaintiff was induced to enter into said agreement through mistake of fact on plaintiff's part induced by fraud of defendant in stating that plaintiff was so qualified well knowing that defendant intended to require plaintiff to submit to another examination with the view of having plaintiff declared physically unqualified to return to work.

Pertinent facts shown by the evidence are that plaintiff was injured in March, 1954, while employed by defendant as switchman; that he was treated by Dr. Batson, an orthopedic surgeon who discharged him after surgery on right knee with expectation that plaintiff would return to work June 15, 1954; that plaintiff worked four days after June 7, 1954, but had to discontinue work due to the injured knee; that on June 21, 1954, plaintiff was treated by Dr. Baranco who discharged plaintiff August 17, 1954, and was then of opinion that plaintiff could return to work; that both doctors were employed by defendant; that depositions of said doctors were taken in April, 1955; that plaintiff worked after his injury as carpenter or truck driver; that he was examined August 8, 1955, by Dr. Hannon, who made a report to defendant's District Surgeon on August 12, 1955, which in pertinent part recites:

"Patient's ability to Work: This patient frankly stated during the examination that he did not feel that he is able to carry on his work as a switchman for full time duty, but could do satisfactory part time.

"While he does have a good stable knee, there is a definite mental hazard in this case which would tend to predispose to injury in getting on and off moving freight cars. On this basis and a very moderate degree of phys-

ical findings I am of the opinion that he should not be employed at the present time as it is a definite hazard. If, on the other hand, the patient can overcome this mental hazard, and will rehabilitate his knee by exercises and other methods of strengthening the joints and stability of the knee, then he may be considered employable. However, before this is done he should be reviewed again and these things definitely brought out and discussed with the patient."

As to the report of August 12, 1955, however, it appears that for some unexplained reason, a copy of this report did not reach defendant's claim agent who conducted the negotiations for settlement until *after* September 27, 1955. Defendant's agent testified that he had no knowledge of the August examination or the report until after the agreement was made. Plaintiff's attorney testified that he likewise had no knowledge of such examination or report until after September 27, 1955. Plaintiff did not testify.

The proof shows that an agreement to settle for a definite sum of money was made. The decree appealed from contains the following findings of fact:

"After a careful consideration of the evidence and the applicable law, the Court finds that the agreement to settle was entered into through and as a result of a mistake on the part of both parties as to a material fact which was a fundamental inducement to the making of the agreement, viz., the physical qualifications of respondent to return to his employment as a switchman for complainant, both parties believing that he was so qualified. In fact, respondent was not so qualified and upon discovery of such fact, he rightfully rescinded the agreement.

"The court recognizes and has fully considered the principle that the law favors compromise and is reluctant to upset a settlement agreement fairly made. Nevertheless, the undisputed evidence shows that both negotiators believed respondent qualified to return to his employment and that neither contemplated further examination prior to his being permitted to return to work. Not to be ignored is the fact that respondent had been led to believe by complainant that the allegations in his complaint stood as an impediment to his returning to work, and the further fact that respondent could justifiably assume that the results of the August examination were favorable and were considered by complainant's Claim Department in limiting the settlement offer to $7,500.00 on account of the contention that respondent was physically qualified to return to work.

"The view of the Court is that the mutual mistake of fact shown constitutes sufficient grounds for denying the relief prayed for without resort to the other grounds set forth in respondent's answer. However, in connection with such other grounds it is worthy of note that the mistaken belief of respondent was substantially induced by complainant's Claim Agent, who had not been notified by the Medical Department of respondent's August disqualification."

We think the testimony supports the finding that both negotiators believed that plaintiff was physically qualified. Physicians employed by defendant, deposed on April 28, 1955, as follows:

Dr. Batson:

"Q. Assume that a switchman is required to work eight hour shifts and in the progress of that work to climb up and down the ladders on various types of railroad cars, and to alight from railroad cars from time to time while they are slowly moving, and to walk along catwalks on top of railroad cars, tell us whether or not when last seen by you, in your opinion,

Mr. Solchenberger was capable of performing that work without serious discomfort or disability?

"A. I thought he was able to return to work.

\* \* \* \* \* \*

"Q. Will you tell us whether or not, when last seen by you on June 9th, 1954, the patient, Mr. Solchenberger was disabled in any way, in your opinion, from the performance of the duties of a carpenter?

"A. I thought he had a good knee, I didn't see any indication for further treatment on it."·

Dr. Baranco:

"Q. When Mr. Solchenberger was discharged on August 17, 1954, so far as you were able to tell, was he disabled from working? A. It was my opinion that Mr. Solchenberger could return to work.

\* \* \* \* \* \*

"Q. \* \* \* In August of 1954, when you discharged Mr. Solchenberger, in your opinion was he capable of doing the normal duties of a railroad switchman without pain or discomfort? A. I felt so, yes.

"Q. Was there any instability in his right knee, at the time you discharged him in August of 1954? A. None that could be determined by physical examination.

"Q. Was there any instability in the knee in December, 1954, which was the last time you saw him? A. No, sir; there was not."

On cross-examination, defendant's claim agent who negotiated the settlement testified:

"Q. Now, you and I, sometime the latter part of September, 1955, were trying to agree on a figure that we would recommend to our respective clients, and I will ask you if during

that discussion you contended and argued to me that as attorney for Mr. Solchenberger that it was your judgment that the man was not disabled and that he was able to go back to work, and that all you knew about it as to why you based your judgment on that statement was that you had read the depositions of Dr. Batson and Dr. Barranco, and that our figure was too high under those circumstances? A. Yes, sir, substantially that, I did tell you.

\* \* \* \* \* \*

"Q. And you contended that the railroad company could not pay the amount that we had demanded in settlement of the case because it was your contention that the man was not disabled and he was able to go back to work and you based your contention on the depositions of Dr. Batson and Dr. Baranco? A. Yes, sir.

"Q. And I will ask you if during our discussion there I didn't tell you that the main thing that Solchenberger is interested in now is going back to work? A. Yes, sir.

"Q. And we agreed in this discussion to settle the case for $7500.00? A. Yes, sir."

■ Defendant argues that if there was a mistake as to plaintiff's physical condition, the mistake was as to a future event and not as to a past or present fact, and, therefore, such mistake would not excuse performance of the agreement. We are cited to Spangler v. Kartzmark, 121 N.J.Eq. 64, 187 A. 770; Pahl v. Tri-City Ry. Co., 190 Iowa 1364, 181 N.W. 670; and Metropolitan Life Ins. Co. v. Humphrey, 167 Tenn. 421, 70 S.W.2d 361; where mistakes in prognosis are distinguished from mistakes in diagnosis. In those cases the courts applied the rule that equity will not release a party from the consequences of voluntary compromises or speculative contracts made with knowl-

edge of the facts and which turn out differently from what was expected. 70 S.W.2d 362. In the case at bar, the mistake was not as to a future event, such as whether or not plaintiff would recover in the future. The mistake was as to an existing fact, that is, plaintiff's physical qualification to return to work at the time the agreement was made.

Defendant argues that in view of plaintiff's statement to Dr. Hannon that plaintiff "did not feel that he is able to carry on his work as a switchman for full time duty, but could do satisfactory part time," plaintiff must be regarded as having relied on his own knowledge and not on the statements of Dr. Batson and Dr. Baranco. Defendant cites Benedum-Trees Oil Co. v. Sutton, 198 Ark. 699, 130 S.W.2d 720, where the court, in enforcing a release executed by plaintiff and reversing a judgment for plaintiff, said:

"* * * Under these circumstances he was not justified in relying on the doctor's statement and must be held to have settled on his own judgment. * * *." 130 S.W.2d 720, 721.

The record shows that on September 24, 1955, plaintiff's attorney sent to plaintiff a letter which recites in pertinent part:

"L & N RR Co. will pay $7,500.00 in settlement of your case and General Attorney Willen has agreed that the release to be executed by you may contain the following provision, viz: 'The seniority rights of W. E. Solchenberger are not impaired or prejudiced by this settlement and release.'

"District Claim Agent Buffington advises that General Attorney Willen has stated emphatically that L & N RR Co. will not voluntarily pay any more than $7,500.00 in settlement of your case because they feel that you have no permanent partial disability and that you have been physically able to return to work since about June of 1954 or December of 1954, and that

270 Ala.—35

unless you are willing to consummate settlement on this basis, the case will have to be tried."

In view of the testimony of defendant's agent and plaintiff's attorney to the effect that the main thing plaintiff was interested in was going back to work, the insertion of the clause as to plaintiff's seniority rights in the proposed release, and the letter of September 24, 1955, from plaintiff's attorney advising plaintiff that defendant would not pay more than $7,500.-00 "because they feel that you have no permanent partial disability and that you have been physically able to return to work since about June of 1954 or December of 1954," we are of opinion that the evidence justified the finding that plaintiff "could justifiably assume that the results of the August examination were favorable and were considered by" defendant's Claim Department in limiting the settlement offer to $7,500. Clearly the court was not bound to find that plaintiff knew the result of the August examination when defendant's negotiating agent was himself ignorant of that result.

Defendant cites also Miles v. Barrett, 223 Ala. 293, 134 So. 661, where in action at law for personal injury, this court held defendant entitled to affirmative charge because plaintiff had executed release, and that parol evidence could not be received to impeach the release or contradict it. Miles v. Barrett was an action at law. Here relief is sought in equity. There the release had been executed. Here defendant seeks to compel execution and the rules to be applied are those obtaining in equity when specific performance is the relief prayed for.

■ This court has set out those rules as follows:

"* * * The proceeding to avoid the execution sale, and have the judgment satisfied, is tantamount to a proceeding for the specific execution of the contract of settlement, and rests on the same principles as if the agree-

ment to compromise the debt were executory. The specific performance of a contract will not be decreed, when it is founded in the mistake of one of the parties as to the existence of material facts of which the party seeking performance is informed, and did not disclose; nor where the contract is not strictly equitable, nor fair and just in all its parts; nor where it unjustly or materially affects the rights of the defendant, and is not founded on an adequate consideration. Moon v. Crowder, 72 Ala. 79; Andrews v. Andrews, 28 Ala. 432; James v. Bank, 17 Ala. 69; Ellis v. Burden, 1 Ala. 458. An agreement to compromise a debt, made by a creditor in ignorance of a judgment, execution, and levy,—a lien on property of sufficient value to pay it,—can scarcely be said to be just, fair, and reasonable, or that it does not materially prejudice the rights of the creditor. Such facts, when known to the debtor, and not disclosed to the creditor, who is ignorant of them, are sufficient to disentitle the debtor to a specific performance of the agreement." Cowan & Co. v. Sapp, 81 Ala. 525, 529, 8 So. 212, 214.

"* * * In 2 Pom.Eq.Jur. § 905 the author states the doctrine as follows: 'The suppression of a material fact, or the failure to communicate a material fact, by the vendor, without any purpose of deceiving or misleading the other party, and even without having himself any knowledge of the fact, while not affecting the validity of the agreement at law, and not being sufficient ground for its cancellation in equity, because not fraudulent, may still render the agreement so unfair, unequal, or hard that a court of equity, in accordance with its settled principles in administering the remedy of specific performance, will refuse to enforce the contract against the party who was misled.' " Byars v. Stubbs, 85 Ala. 256, 258, 4 So. 755, 756.

"* * * In an application to a court of equity, the defendant may rebut the *prima facie* case made by the contract alone, and show, by proof of extrinsic facts, that specific performance would not be strictly equitable. From our own decisions the following principles governing the discretion of the court in decreeing the enforcement of contracts may be regarded as settled: The agreement must be free from unfairness, hardship, or mistake going to its essence. A fraudulent representation or concealment, sufficient to avoid it at law, or for its rescission or cancellation in equity, is not essential to a denial of specific performance. If the contract is obtained by the suppression of material facts known to the party seeking performance, and unknown to the defendant; or if the defendant was led into making it by surprise without fault on his part, though not misled by positive representations of the other party; or if it is impressed with any inequitable feature, the court will refuse to enforce the contract. (Citations Omitted.)" Campbell v. Durham, 86 Ala. 299, 300, 5 So. 507.

The chancellor concluded that the agreement here sought to be enforced was founded on mistake of plaintiff as to the existence of a material fact, that is his physical qualification, that some of defendant's agents or employees had knowledge of the existence of the report of the August examination but did not disclose that information to plaintiff. We cannot escape the conclusion that knowledge of that report was a material fact unknown to plaintiff. We think it is clear that the record does not show any deliberate withholding of that information from plaintiff on the part of defendant or any of its agents, and certainly the record does not show any intentional misrepresentation or withholding of information by defendant's claim agent. None the less, we are also clear to the conclusion, that withholding

of the August report coupled with plaintiff's belief based on the depositions of Dr. Batson and Dr. Baranco constitute sufficient reason for denying specific performance in this case.

 The trial court's findings were based on testimony heard ore tenus. When the trial court sees and hears the witnesses testify, the findings of the trial court which determine questions of fact will not be disturbed on appeal, unless plainly and palpably wrong, Downs v. Downs, 257 Ala. 643, 60 So.2d 686; and on mandamus to review decree of trial court rendered on testimony taken ore tenus before the court, the usual presumption prevails in favor of the correctness of the court's finding of facts, Ex parte Davis, 249 Ala. 221, 30 So. 2d 648. We cannot say that the findings of the chancellor are plainly and palpably wrong here.

Error in the decree denying specific performance has not been shown, and the writ of mandamus is denied.

Appeal dismissed.

Writ denied.

GOODWYN and MERRILL, JJ., concur.

SIMPSON, J., concurs specially.

SIMPSON, Justice (concurring specially).

With respect to the foregoing opinion on the merits I concur.

On the procedural question, however, I concur only in the result. It has long been my opinion that the method of review of motions to transfer was correctly stated in Esslinger v. Spragins, 236 Ala. 508, 183 So. 401, 403, as follows:

"We have uniformly held that an order refusing to transfer a cause from the law docket to the equity docket may not be assigned for error 'on any sort of an appeal, and one

which makes the transfer can only be assigned for error on appeal from a final decree.' Holder v. Taylor, 233 Ala. 477, 172 So. 761, 762; Derzis v. Cox, 223 Ala. 517, 137 So. 306; Ex parte Louisville & N. R. Co., 211 Ala. 531, 100 So. 843; Pearson v. City of Birmingham, 210 Ala. 296, 97 So. 916; Smith v. Grayson, 214 Ala. 197, 107 So. 448; Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Code, Section 6490."

See also Employers Ins. Co. of Alabama v. Brock, 233 Ala. 551(1), 172 So. 671; Jones v. Wright, 220 Ala. 406(4), 125 So. 645.

True, in the instant case, motion was granted transferring the cause to equity, but in equity demurrer was sustained to the bill, and the cause re-transferred to law. This was tantamount to a sustaining of a demurrer to the motion to transfer in the first instance. Jones v. Wright, supra.