13 So.2d 402

**Ex parte ROBINSON.**

**3 Div. 380.**

Supreme Court of Alabama.

April 8, 1943.

Rehearing Denied May 13, 1943.

Sollie F. Commander, of Montgomery, for petitioner.

Walter J. Knabe, of Montgomery, for respondent.

FOSTER, Justice.

The chief question here depends upon whether the defendant in an ejectment suit has an equitable question, the decision of which should dispose of the cause, and which cannot be disposed of on the law side of the court.

The question arises on a retransfer of the cause to the law side ordered in the decree which sustained demurrers to the bill filed by defendant in ejectment, after it had been removed to equity. It is here on an original mandamus to require the judge to vacate the order sustaining the demurrer and retransfer it. Title 13, section 155, Code of 1940.

This procedure is not questioned, and is approved by our cases. Jones v. Wright, 220 Ala. 406, 125 So. 645; Altman v. Barrett, 234 Ala. 234, 174 So. 293.

The facts which are relied on to sustain petitioner's equitable claim will be stated with only such detail as is necessary to illustrate the question presented.

Assuming the ownership of a tract of six acres of land by Ruth J. Lambert on June 10, 1931, she on that day entered into a lease sale contract of the land to Knechtel, containing the following provision: "It is understood and agreed between the parties hereto that the property herein described will be subdivided, at the expense of the party of the second part; into approximately fifty-seven (57) lots of substantially the same size and value. It is further agreed that the party of the first part will release from the operation of this agreement and deed to the party of the second part or such person as the party of the second part may designate, any lots or lot upon payment to the party of the first part of the sum of seventy-five ($75.-00) dollars, in cash for each lot so released and deeded. Any payment made under the provisions of this paragraph shall be credited on the outstanding note on said series of notes, last maturing, interest on pay-

ments so made to abate from date of payment."

The bill alleges that on November 15, 1931, Knechtel entered into a written agreement with petitioner, binding both to the sale and purchase of lot twenty according to a certain survey of the aforesaid six acres, for the sum of $150 to "be paid in ten days after the complainant received the money which was due to him from the U. S. Government." The bill alleges that petitioner was at once put into possession of the said lot No. 20, supra, by Knechtel, and he immediately made improvements on it to the value of $1,200, including a dwelling house which he occupied. That he has since November 15, 1931, continuously occupied and held the lot "by adverse, actual, open, visible, exclusive, hostile, peaceable and undisturbed possession."

On July 28, 1932, Knechtel executed a quitclaim deed back to Lambert. At that time petitioner was in possession of lot No. 20, supra, but had paid no part of the purchase money. The deed by Knechtel to Lambert is not attached as an exhibit, and we are not advised of any special circumstances which were the occasion of its execution. It is not alleged that Knechtel had failed to pay any of the installments of the purchase price, or to comply with any of the terms of the agreement with Lambert which justified a forfeiture of his right as a purchaser, and thereby to become a tenant of Lambert; or that she had made such a claim.

It does not appear that Lambert asserted any right in lot 20, supra, then in possession of petitioner, of which he had notice, or ever called on him for its possession.

But after said quitclaim by Knechtel to Lambert, and on October 26, 1932, Knechtel and petitioner entered into another contract in writing carrying out and supplementing the original contract between them, in which receipt of seventy-five dollars is acknowledged with an agreement to pay the balance in annual installments.

On August 9, 1932, Lambert executed a warranty deed to Simpson conveying certain parts of this tract including lot 20, supra. And plaintiff in the ejectment suit claims under Simpson.

■ When Lambert acquired the quitclaim deed on July 28, 1932, and at the time of her conveyance to Simpson, and of the

execution of the other deeds under which plaintiffs in the ejectment claim title, the actual, visible possession of lot No. 20 is alleged to have been in petitioner. So that whatever rights any of them acquired by such conveyances were with constructive notice of petitioner's claim. First National Bank v. Haynes, 236 Ala. 133, 181 So. 495.

Since the bill does not allege that at the time the contract with petitioner was made by Knechtel November 15, 1931, Knechtel had made default or that Lambert had the right to declare a forfeiture by him, or had undertaken to do so, petitioner thereby became entitled to the benefits of a subpurchaser under the clause of the contract which we have quoted. That contract does not fix a time when the seventy-five dollars shall be paid to Lambert, except that it should be construed to be at or before the execution of a deed to him by her.

So that if on July 28, 1932, when she received the deed from Knechtel there had been no default or forfeiture declared, that deed would undoubtedly be subject to the rights which petitioner acquired by his contract with Knechtel on November 15, 1931, as would also the deeds of her subpurchasers, the present claimants of the lot. First National Bank v. Haynes, 236 Ala. 133, 181 So. 495.

The bill should probably be so construed for present purposes, which is only now reviewed on its general equity, there being only a general demurrer sustained by the trial court. But it is open to attack on a special ground of demurrer for the failure to allege that there was no forfeiture declared on a default of Knechtel which had then occurred. We think it not inappropriate to consider its sufficiency in that respect when tested by a special ground of demurrer as it doubtless will be on a further trial.

That brings us to the question of whether petitioner acquired rights by his contract which bound Lambert even though Knechtel may have made default which justified a forfeiture insofar as he was concerned, or whether a court of equity will set aside such forfeiture.

The rule is thus stated in 66 Corpus Juris 1080, section 872: "A subpurchaser creates between the original vendor and subpurchaser a privity of estate, but does not, in the absence of agreement, create a privity of contract. When the vendor is notified of the sale by the purchaser he holds the legal title subject to the equitable estate acquired by the subpurchaser." And, on page 1081, section 875: "Where a vendor who has contracted to sell land for the purpose of resale receives part of the proceeds paid by a subpurchaser in possession under a subcontract, equity will render a decree that will do equity to all parties." And in section 876: "On the same principle that an ordinary contract of sale converts the owner of land into a trustee for the purchaser, a subsale converts the (first) purchaser into a trustee for the subpurchaser." This relation between an original seller and his purchaser is well known, when both parties are bound by the contract. Love v. Butler, 129 Ala. 531, 30 So. 735; Wimbish v. Montgomery B. & L. Ass'n, 69 Ala. 575; Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342(10); Loventhal v. Home Ins. Co., 112 Ala. 108, 20 So. 419, 33 L.R.A. 258, 57 Am.St.Rep. 17.

Time is not generally of the essence of a contract for the sale of real estate. Forrester v. Granberry, 211 Ala. 402, 100 So. 551; Isom v. Johnson, 205 Ala. 157, 87 So. 543.

Unless petitioner lost his equity in the land by reason of some forfeiture in the contract between Lambert and Knechtel, it can be enforced on the showing made by the bill against those who with notice acquired the land from Lambert now asserting title against petitioner. First National Bank v. Haynes, supra.

But assuming that there had been a forfeiture. The jurisdiction of a court of equity to relieve against forfeitures is well known. It "is founded upon the principle that a party having legal rights shall not be permitted to use them oppressively to the injustice of the defaulting party." Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348, 349. "The hard and harsh remedy of forfeiture yields to compensation when fair dealing and good conscience require it." Dean v. Coosa County Lumber Co., 232 Ala. 177, 167 So. 566, 571(5): see, also, Hawkins v. Coston, 214 Ala. 135, 107 So. 50; Cantanzano v. Hydinger, 228 Ala. 547, 154 So. 588.

In the instant case this petitioner was not merely a subpurchaser under Knechtel, but there was the agreement of Lambert that she would convey to a sub-

purchaser of such a lot upon the payment to her of seventy-five dollars. When the agreement with petitioner was made, there was apparently no forfeiture, if ever. So that when that contract was made, Lambert became a party to it, on notice to her. There was then privity of contract with petitioner, if she had notice of it. Such notice is not distinctly alleged, only constructive notice by the possession of petitioner. But be that as it may, petitioner expended a large sum of money on the lot. She never made protest, nor demanded payment of him, nor possession of the lot. Neither did her successors, except by this suit, so far as we know. It would be contrary to our sense of "fair dealing and good conscience" to permit her or her successors, charged with notice when they bought the lot, to take it from petitioner with all his improvements, as in an ejectment suit, when he is willing and able to pay the seventy-five dollars specified in the contract between Lambert and Knechtel,— as he must do as a condition to relief, together with interest from the time he entered into possession of the lot.

We think that this case on the averments of the bill is one in which equity should upon proper terms set aside the forfeiture, if it exists, to the extent that it stands in the way of petitioner securing a performance of the contract made by Lambert to deed a lot to a subpurchaser upon the payment of seventy-five dollars.

There may be insufficiency of averments which may be corrected by amendment, if special grounds of demurrer point them out. But we think there is equity in the bill on the principles we have discussed, not considering others claimed by petitioner.

Petitioner also complains of the decree of the court overruling demurrer to his bill filed on the equity side of the court after a transfer to it, and also retransferring the cause to the law side of the court, because there was "no hearing on said demurrer, no setting of a date for hearing, no notice given petitioner of a hearing on said demurrers."

The decree of court recites that the cause coming on to be heard, was submitted for decree on demurrers and that same was argued by counsel and understood by the court. In response to the rule nisi, the judge's answer discloses that the cause was set for April 13, 1942: on that day plaintiff's attorney attacked the bill on the ground that it contained no equity. "After a hearing on this ground, attorney for complainant (respondent on the law side) amended his bill. When the court indicated what its ruling would be, attorney for complainant for the first time objected to the hearing. The judge gave each side five days in which to file briefs, after which the court rendered judgment."

■ The circuit court is open at all times for the transaction of any business. Code of 1940, Title 13, section 114. And this means also courts of equity. Rule 3 Equity Rules. The old rule 74 chancery court, providing for setting down for hearing a demurrer in vacation (between sessions) on ten days' notice as construed by our Court in connection with section 6688, Code of 1923, Code 1940, Tit. 13, § 161 (West v. State, 233 Ala. 588, 173 So. 46; Caudle v. Cotton, 234 Ala. 126, 173 So. 847; Gorman v. State, 240 Ala. 175, 198 So. 3), was not brought forward into the new rules. So that under the present practice there is no express requirement of notice of submission on demurrer between sessions of court (Rule 61). But of course the court will observe the rights of all parties in respect to such matters. When there is nothing in the record which shows that the submission was not at a regular call, the presumption will be indulged that such was the fact. But if that was not the situation, and either party complains of prejudice on that account, we observed in West v. State, supra, that he should make a motion in the trial court to set aside the decree on that ground. If that motion is denied, he can come to this court for mandamus on that account, but not otherwise. There is no such motion here shown.

The petition insofar as it seeks mandamus on that ground cannot be sustained.

■ But petitioner by this proceeding seeks to review the ruling of the court holding that his bill as filed, was without equity, and that retransferring the cause to the law side of the court was improper, all in the same decree. As we have here observed, that method is available to him.

A writ of mandamus is ordered to be issued to the Hon. Eugene W. Carter, Judge of the Circuit Court of Montgomery County, directing him to annul and vacate his decree of May 9th, 1942, sustaining demurrer to the bill, and retransferring the cause to the law docket; and to overrule

318

the demurrer as filed on general grounds to the bill.

Writ awarded.

GARDNER, C. J., and BOULDIN and LAWSON, JJ., concur.

On Rehearing.

FOSTER, Justice.

The foregoing opinion is subject to the interpretation that petitioner need pay to Lambert only $75 and interest specified in the clause quoted from the contract as a condition to relief.

Our attention has now been called to another theory which requires a modification of that feature of the opinion. We are reminded that on July 28, 1932, Knechtel executed a quitclaim deed to Lambert which embraces this lot, and it is insisted that he thereby in substance and effect conveyed all rights he had under his contract with petitioner which included his right to the consideration of $150 specified in it.

We do not wish here to foreclose any claim which may be available to Lambert or her successors in interest, arising out of such alleged assignment, to the benefit of the entire purchase price agreed to be paid by petitioner to Knechtel, although he may have afterwards paid part of it to him, nor do we wish to discuss their respective rights in that respect. There should be pleadings presenting those questions setting up the respective contentions of the parties.

Opinion modified: application overruled.

GARDNER, C. J., and BOULDIN and LAWSON, JJ., concur.