618 P.2d 1237

**Opal A. CAMPBELL and Sam Q. Campbell, Plaintiffs–Appellants,**

v.

**George A. KERR and Jean Phyllis Kerr, his wife, Involuntary Plaintiffs–Appellees,**

v.

**Jayne STEPNOWSKI et al., Defendants– Counter Plaintiffs and Third–Party Plaintiffs–Appellees,**

and

**Beverly Katz, Third–Party Defendant–Appellee.**

No. 12863.

Supreme Court of New Mexico.

Oct. 16, 1980.

Rehearing Denied Nov. 12, 1980.

Coors, Singer & Stratton, Robert N. Singer, Albuquerque, for plaintiffs–appellants.

Barnhart & Oliver, Charles E. Barnhart, Albuquerque, for appellees Kerr.

Marchiondo & Berry, Charles G. Berry, Albuquerque, for appellee Katz.

Beverly Katz, pro se.

OPINION

FEDERICI, Justice.

Defendants Samuells owned property in Bernalillo County which contained a mobile home park. They conveyed this property under the terms of a real estate contract to involuntary plaintiff–appellee Kerr in 1971. In 1972, Samuells assigned their interest in the contract to Stepnowski. In 1975, Kerr sold the property to plaintiff–appellant Campbell under another real estate contract and Campbell sold it to third–party defendant Katz in the same manner in 1976. Each purchaser assumed the prior real estate contracts and some mortgages held on the property. The present suit arose out of these transactions when Katz defaulted in making her payments.

Campbell brought suit in the district court on October 26, 1977, to enjoin Samuells and Stepnowski from filing a special warranty deed conveying the property from Kerr to Samuells, and to require Samuells and Stepnowski to reinstate the deed, along with a real estate contract into an escrow account from which they had been withdrawn by Stepnowski. Stepnowski counterclaimed and brought a third party complaint in a suit to quiet title against Kerr, Campbell and Katz. During this time, Kerr agreed to forebear from defaulting Campbell. On December 12, 1977, Kerr withdrew from this agreement. On February 15, 1978, Campbell obtained an injunction restraining Katz from entering the premises or collecting rentals from the units in the park. During pendency of the suit, Kerr paid his contract with Samuells, satisfying Stepnowski. Kerr proceeded to litigate the issues in Stepnowski's place. On December 18, 1978, the district court entered findings and conclusions, followed by judgment on

December 3, 1979. The court ordered that Kerr be placed in possession of the premises free and clear of all claims from Campbell and Katz, that Campbell present an accounting of the operation of the park to Kerr, together with funds and profits on hand, and that Kerr pay Campbell $250 per month as compensation for acting as a receiver from December 1977 through January 1979. Campbell appeals this judgment. The issues we discuss on appeal are:

(1) Whether Kerr had the right to proceed against Campbell in this suit;

(2) Whether Kerr's failure to file pleadings herein estops him from litigating his claims in the present case;

(3) Whether Kerr properly amended the pleadings before the trial court to conform to the evidence;

(4) Whether Kerr made proper demand for payment to Campbell, entitling him to forfeit Campbell's interest in the property;

(5) Whether Kerr's agreement to forbear from defaulting Campbell constituted a waiver of Kerr's right to default her;

(6) Whether Campbell tendered sufficient sums to Kerr in time to cure her default;

(7) Whether either Kerr or Stepnowski contributed to the default of Campbell, estopping Kerr from defaulting Campbell; and

(8) Whether the trial court erred in awarding management fees to Campbell during the period prior to foreclosure.

Katz has not appealed the judgment, but has filed a brief herein pro se, requesting consideration of additional issues. We address her status in this matter first.

In a lawsuit related to the present suit, the Court of Appeals allowed Katz to rescind the Campbell–Katz contract, even though Katz could not restore Campbell to the status quo ante. *Robison v. Katz*, 94 N.M. 314, 610 P.2d 201 (Ct.App.1980), *cert. denied*, 94 N.M. 675, 615 P.2d 992 (1980). Katz's interest in the property was thereby terminated. The trial court in the present case quieted title in favor of Kerr as

against Katz. Since Katz had no interest in the property and since she has not appealed from the judgment against her in this case, she may not now seek relief from the trial court's judgment. *Mabrey v. Mobil Oil Corporation*, 84 N.M. 272, 502 P.2d 297 (Ct.App. 1972), *cert. denied*, 83 N.M. 740, 497 P.2d 742 (1972). We proceed now with Campbell's appeal.

## I.

As stated above, Stepnowski filed a counterclaim against Kerr, Campbell and Katz to quiet title. Prior to trial, Kerr purchased the property from Stepnowski. The trial court found that Kerr paid the Samuells–Kerr contract in full to the owner (Stepnowski), and was substituted in the position of Stepnowski in the litigation. Campbell agreed that Stepnowski's interest was transferred to Kerr. Under this state of facts, Kerr had the right to try little to the subject property. *Pueblo de Taos v. Archuleta*, 64 F.2d 807 (10th Cir. 1933).

## II.

Campbell contends that Kerr could not quiet title in this suit. She reasons that Kerr did not file any pleadings and that Kerr could not "step into the shoes" of Stepnowski and use Stepnowski's pleadings.

N.M.R.Civ.P. 25(c), N.M.S.A. 1978 (Repl.Pamp.1980) states:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Kerr moved for such a substitution. The parties litigated the issues in this position, and the court found that Kerr was substituted. This was proper procedure under the rule.

## III.

Campbell alleges that even if Kerr could be properly substituted for Stepnowski, the pleadings were not properly amended to conform to the evidence Kerr brought

before the court, and the court did not have jurisdiction to enter judgment in the case. N.M.R.Civ.P. 15(b), N.M.S.A. 1978 (Repl. Pamp.1980), sets out the following requirements:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

At the close of the trial Kerr moved that the pleadings be amended to conform to the proof offered in the matter. Campbell joined in this motion. The court ruled that the pleadings were amended in accordance with the motion. Kerr followed the proper procedure under the rule, and Campbell joined the motion. She cannot now claim that the pleadings were not properly amended. Even if Campbell had objected, the court could have so ruled. *Branch v. Mays*, 89 N.M. 536, 554 P.2d 1297 (Ct.App. 1976).

### IV.

■ Campbell next alleges that Kerr waived his right to foreclose Campbell's interest by failing to make proper demand for payment and by agreeing to forbear pending the Katz litigation. All three of the real estate contracts involved contain the following notice provision:

> Should the purchaser fail to make any of the said payments . . . and continue in default for thirty (30) days after written

demand for such payments . . . has been mailed to the Purchaser addressed to [them] at [stated address of purchaser] then the Owner may, at his option, either declare the whole amount remaining unpaid to be then due, . . . or he may terminate this contract. . . . An affidavit made by said Owner or his agent showing such default and forfeiture and recorded in the County Clerk's office shall be conclusive proof . . . of such default and forfeiture.

Stepnowski sent a written demand letter to Kerr which followed the contractual requirements, though it demanded attorneys fees which were not actually due. It was sent September 12, 1977. Kerr made demand upon Katz on September 24, 1977, sending a copy to Campbell. Kerr made another demand upon Katz alone on October 12, 1977, after it became apparent that Katz had not received the first demand letter. On October 14, 1977, Stepnowski obtained from the bank the escrowed Samuells–Kerr real estate contract and special warranty deed from Kerr to Samuells.

A major purpose of the notice requirement in such contracts is to give the vendee a specified time in which to bring the contract current so that the vendee's rights in the property will not be forfeited. Campbell received such a notice. The fact that the salutation addressed Katz is insignificant. The purpose of the notice clause in the contract was fulfilled. Campbell had knowledge of Kerr's intent to enforce his rights to forfeiture under the contract. This method of notification was reasonable and complied with the terms of the contract. *See Carmichael v. Rice*, 49 N.M. 114, 158 P.2d 290 (1945); *Hansen v. Christensen*, 545 P.2d 1152 (Utah 1976). *See also* Annot., 94 A.L.R. 1239 (1935); 77 Am.Jur.2d *Vendor and Purchaser* §§ 409, 411 (1975).

■ However, Campbell argues the Stepnowski had taken the Samuells–Kerr documents out of escrow on October 14, ten days prior to the time in which Campbell could bring payments current under Kerr's demand. Since Campbell could no longer be

assured that Kerr could give her valid title, she could not be required to bring the contract payments current, nor could Kerr default her. The rule in New Mexico is that "failure of a vendor to have the clear title he agrees to convey does not justify rescission or repudiation by a vendee if vendor can perform by delivery of the agreed title at the time required by the contract for such performance." *Mountain View Corporation v. Horne*, 74 N.M. 540, 541, 395 P.2d 676, 677 (1964). Kerr was not required to perform until Campbell had made all payments due under the Kerr–Campbell contract. Campbell could have tendered all sums due under contract to Kerr at any time. She did not. In any event, the indications from the record are that Kerr could have performed. This is evidenced by the fact that he did pay off his real estate contract in full, giving him valid title to the property.

## V.

■ Campbell next alleges that Kerr's agreement to forbear from defaulting her constituted a waiver of her rights. An agreement for a temporary forbearance is not a waiver. *Cf. Cooper v. Albuquerque City Commission*, 85 N.M. 786, 518 P.2d 275 (1974) (wherein intervenor did not waive his right to intervene in lawsuit by failing to assert his right until he felt his rights were no longer adequately represented by party). Whether there is a waiver is a question of fact. *Federal Land Bank of Wichita v. Beck*, 46 N.M. 87, 121 P.2d 147 (1942). There was substantial evidence before the trial court to show that Kerr's actions constituted a temporary forbearance and not a waiver. We will not disturb the judgment of the trial court where it is supported by substantial evidence. *Montoya v. Travelers Ins. Co.*, 91 N.M. 667, 579 P.2d 793 (1978).

## VI.

■ Campbell next contends that she tendered sufficient sums to Kerr to bring the Kerr–Campbell contract current prior to termination of any demand period imposed by Kerr. Kerr's demand letter of September 24, 1977, was effective notice to Campbell. Prior to termination of the thirty–day grace period, Kerr agreed to temporarily forbear from defaulting Campbell, which agreement was terminated on December 12, 1977. The validity of the agreement is not at issue. We need not consider the effect Kerr's subsequent notice to Katz had on the time limitation because of the forbearance agreement. There was conflicting evidence before the trial court, and it found that at no time had Campbell or Katz made any attempt to cure all of the arrears and bring the payments current. This finding is supported by substantial evidence and will not be overturned. *Sternloff v. Hughes*, 91 N.M. 604, 577 P.2d 1250 (1978).

■ Since there was an effective demand made upon Campbell, and Campbell did not tender sufficient sums to Kerr to cure her default within the required period, and in fact did not tender sufficient sums to cure the default to Kerr at any time prior to trial in April and May of 1978, she was properly defaulted. Campbell did make payments due on mortgages subsequent to Kerr's demand letter, which were accepted by the bank, but these payments were made during the period of the forbearance agreement and during the period she was acting as "manager" of the premises pending litigation. The former payments cannot operate as a waiver during the period of the forbearance agreement, and the latter payments which were made from collection from rentals of the mobile home park, in accordance with an agreement between Campbell, Kerr and Stepnowski, cannot operate as a waiver where it was Campbell's duty to make such payments.

## VII.

Campbell asserts that both Stepnowski and Kerr contributed to her default, and should be estopped from forfeiting Campbell. We agree with Campbell that since Kerr stepped into the shoes of Stepnowski, he must also assume the burden of any of Stepnowski's misconduct towards Campbell. Campbell alleges that Stepnowski exhibited

misconduct toward her by not affirmatively attempting to notify Kerr at her new address, and by not notifying Campbell and Katz, even though he knew they were subpurchasers of the property under separate real estate contracts. Campbell has not cited to us any authority in support of this position, nor has Kerr offered any to rebut it.

■■■■ The Samuells–Kerr contract requires demand to be made at a specified address upon Kerr. This was done. We know of no affirmative duty placed upon a vendor in this situation to attempt to find the vendee, or to contact subpurchasers. We have stated that the vendee is entitled to reasonable notice of demand. The Samuells–Kerr contract provides for such reasonable notice unambiguously, and it is our function to enforce it as made. *Schaefer v. Hinkle*, 93 N.M. 129, 597 P.2d 314 (1979). Stepnowski fulfilled his obligation under the contract to notify Kerr. If Kerr wished to insure notice, he should have notified his vendor or the escrow agent. Likewise, there is privity of estate, but not privity of contract between a vendor and subpurchasers. *Ex parte Robinson*, 244 Ala. 313, 13 So.2d 402 (1943); *Geo. V. Clark Co. v. New York New Haven and H. R. Co.*, 279 App. Div. 39, 107 N.Y.S.2d 721 (1951). Stepnowski had no legal duty to notify Campbell of his demand upon Kerr. A subpurchaser of land from a purchaser with notice of the terms of the contract between the original vendor and the purchaser takes the land subject to such terms. *Frye v. Partridge*, 82 Ill. 267 (1876). Campbell had notice of the terms of the Samuells–Kerr contract. She could have requested notice in the event of a demand from the vendor. She did not.

We note that more than two months prior to either the Stepnowski demand letter or the Kerr demand letter, Katz became in default to Campbell for payments due under the Campbell–Katz contract. Campbell sought a declaratory judgment ordering Katz to pay on the contract, and Katz obtained an injunction to keep Campbell from forfeiting her. The appropriateness of this injunction was obvious, since the court found, in the related case of *Robison v. Katz, supra*, that Katz was induced to purchase the property from Campbell by negligent misrepresentation in the first place. Under these circumstances, Campbell knew that she was in default to Kerr. She could have cured the default and thereby assured valid title for Kerr through Samuells. Instead, she awaited a demand letter. We can see no equities in Campbell's favor which would require Stepnowski to notify Campbell of her demands upon Kerr.

Campbell alleges that Kerr contributed to her default by negligently failing to inform Stepnowski or the escrow bank of his change in address, causing a forfeit of his and Campbell's interest in the property. This made Kerr unable to convey or guarantee conveyance of title. However, we noted previously that Kerr did not have to deliver Campbell title until completion of the terms of the Kerr–Campbell contract. Since Kerr later purchased the property outright from Stepnowski, thus assuring his ability to convey title, we cannot say that Kerr contributed to Campbell's default.

Kerr is not estopped from defaulting Campbell because of either Kerr's acts or Stepnowski's acts.

### VIII.

■■ Campbell contends that the court awarded her a "management fee" for her "services" in operating the property from December 1977 until the date of judgment, without any supporting findings of fact. This contention is erroneous. The trial court made the following finding of fact:

On the first day of December, 1977 Opal A. Campbell went into physical possession of the real estate involved in this litigation through agreement of Kerr, Campbell and by order of Judge Rozier Sanchez of the Bernalillo County District Court, and Campbell has since that day been operating the mobile home park located on the subject real estate for the *use and benefit of the ultimate owner.* (Emphasis added.)

Regardless of whether Campbell may be called a "manager", she was providing services for the ultimate owner, and it was within the trial court's discretion to award fees to her for providing the service.

There was testimony before the court concerning the extent of services provided by Campbell during this period. However, there was not any testimony concerning the reasonable value of Campbell's service, nor was this issue litigated by the parties. The court's award of $250 per month for management fees appears to us to be grossly inadequate. However, without sufficient evidence on this issue in the record, we must remand to the trial court for an evidentiary hearing and determination based upon the evidence presented therein. *Getz v. Equitable Life Assur. Soc. of U. S.*, 90 N.M. 195, 561 P.2d 468 (1977), *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

Other points raised by appellant have been considered and are deemed without merit.

The trial court is affirmed on all issues except the amount of reasonable "management" fees for Campbell. We reverse and remand on this issue only for further determinations by the trial court in accordance with this opinion.

IT IS SO ORDERED.

SOSA, C. J., and PAYNE, J., concur.