622 P.2d 1032

In the Matter of the ESTATE OF Ruby HOLT, Deceased.

COMMERCE BANK & TRUST, Personal Representative of the Estate of Ruby Doris Holt, Deceased, Appellant,

v.

Tammy Anne BRADY, Appellee.

No. 13074.

Supreme Court of New Mexico.

Jan. 26, 1981.

Dow & Feezer, James L. Dow, Carlsbad, for appellant.

Watson & Watson, John W. Fisk, Artesia, for appellee.

## OPINION

SOSA, Senior Justice.

This is an appeal from the district court's grant of summary judgment in favor of appellee Tammy Anne Brady establishing her as an heir to her natural grandmother's estate. The issue is whether an adopted child can inherit from her natural grandmother when (1) the child's natural father predeceases the grandmother and (2) the adoption occurs subsequent to the natural father's death but prior to the grandmother's death. We reverse the district court and hold that the child cannot inherit under these circumstances.

Ruby Holt, the deceased, had eight children, seven of whom were named in the petition for probate, and a son, Tommy Holt, appellee's natural father. Tommy Holt predeceased his mother in 1971. In 1975, appellee was adopted by her natural mother's husband, Steven Brady. Ruby Holt died intestate in 1979. An order of intestacy and determination of heirship was entered by the probate court in favor of Ruby Holt's seven surviving children. Appellee petitioned the court to set aside its order establishing heirship in the seven children and to recover estate assets distributed to them. The court granted her summary judgment and the Commerce Bank & Trust Co. (trustee for the seven children) appealed.

This case involves the heirship of Ruby Holt, which must be determined according to the New Mexico laws on descent and distribution in effect at the time of her death intestate in 1979. Since this case also involves the adoption of one claiming to be an heir, we must also consider what effect, if any, the adoption has upon inheritance by the adopted person.

■ Section 45–2–103, N.M.S.A.1978 provides that intestate succession for heirs other than a surviving spouse is as follows:

> [T]he entire intestate estate if there is no surviving spouse, passes as follows:
>
> A. to the issue of the decedent; if they are all of the same degree of kinship to the decedent, they take equally, but if of unequal degree, then those of more remote degree take by representation;

Appellee Tammy Brady claims heirship to Ruby Holt's estate by right of representation through her natural father. Appellant, however, claims that Section 45–2–109, N.M.S.A.1978 bars her from receiving a share because Tammy Brady, having been adopted four years prior to Ruby Holt's death, was no longer the legal child of Tommy Holt in 1979. Section 45–2–109 provides:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through or from a person:
>
> . A. an adopted person is the child of an adopting parent and not of the natural parents, and in the event of the death of the adopted child, his estate shall pass as provided by law for natural born children of the same family, all to the exclusion of the natural parents of such child; . . . .

It is appellee's contention that this statute deprives only the natural parents of the right to inherit from a natural child after adoption but does not deprive the natural child of the right to inherit from the natural parent when the adoption occurs after the death of the natural parent. The problem with such an argument is that it fails to recognize the fact that it is Ruby Holt's estate we are dealing with, not the estate of the natural father. At the time of Ruby Holt's death, the parent-child relationship between Tommy Holt and Tammy Brady no longer existed. The clear meaning of Section 45–2–109 is that an adoption severs the legal rights and privileges between the adopted child and the natural parents. From the point of adoption on, the adopted child belongs to the adoptive parents as if he or she had been their natural child, with the same rights of a natural child, *all to the exclusion of the natural parents.*

■ It is also appellee's contention that Section 40–7–15, N.M.S.A.1978 preserves her right to inherit *through* her father. The statute establishes the effect of an adoption on the rights of inheritance. It states:

A. A judgment of adoption, . . . has the following effect as to matters within the jurisdiction of or before the court:

(1) to divest the natural parents and the child of all legal rights, privileges, duties and obligations, *including rights of inheritance,* with respect to each other;

.　.　.　.　.

(2) if an individual dies before the parent-child relationship between the deceased and any other individual is terminated, no subsequent adoption proceedings affect the right of inheritance, if any, through or from the deceased individual. (Emphasis added.)

Appellee argues that "individual" in subsection (2) above refers to her natural father, Tommy Holt. Since she was adopted subsequent to the death of her natural father, she is entitled to inherit *through* him.

Again, this is erroneous because the case involves the intestate succession of Tammy Brady's grandmother, not that of Tammy's natural father. Appellee has placed the emphasis of the adoption on the wrong period of time. The question is not when the adoption took place with respect to the natural father's death but when it took place with respect to the death of the person whose heirship we are determining. In this case, the fact that Tommy Holt died prior to the adoption is irrelevant to the determination of his mother's heirship. It would be relevant only to his heirship. Therefore, we hold that "individual" in the statute refers to Ruby Holt, and at the time of her death Tammy Brady was *no longer her lawful* descendant under the present laws of descent and distribution. Tammy Brady's adoption cut off the right to inherit from her grandmother. Otherwise, under appellee's construction, Tammy Brady would be allowed a dual inheritance, once from her natural father's bloodline, and again from her adoptive parents' bloodline. It would also allow a stranger into the Holt bloodline if Tammy Brady predeceased Ruby Holt since Tammy's adoptive parents would be her heirs. It was not intended by the legislature to allow such a situation.

■ If we construe Section 40–7–15 to mean "an individual [whose estate succession is at issue] dies," it will be consistent with the sections dealing with intestate succession. "It is a familiar rule of statutory construction that all of the provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent." *Allen v. McClellan,* 75 N.M. 400, 402, 405 P.2d 405, 406 (1965). The foregoing provisions reflect a legislative intent to treat adopted children as if they were the natural children of the adopting parents. This is consistent with the public policy in New Mexico as first announced by this Court in *Delaney v. First National Bank In Albuquerque,* 73 N.M. 192, 386 P.2d 711 (1963).

This policy is consistent with the developing trend to treat an adopted child as the

natural child of the adopting parents and the family of those parents, and to terminate in every respect, when considering legal rights and obligations, the relationship with the child's natural parents. [Citations omitted.]

*In re Estate of Shehady*, 83 N.M. 311, 312, 491 P.2d 528, 529 (1971).

In the *Shehady* case the adopted children were precluded from inheriting from their natural father because they had been adopted prior to his death. In the same case this Court cited with approval a Wisconsin case, *In re Estate of Topel*, 32 Wis.2d 223, 145 N.W.2d 162 (1966), which involved the identical fact pattern to the case at bar and which involved a statute similar to Section 40–7–15, N.M.S.A.1978. In the *Topel* case, three grandchildren were denied heirship to the estate of their natural paternal grandfather who had died intestate. The children had been adopted prior to the grandfather's death, but subsequent to their natural father's death, which is a situation identical to Tammy Brady's situation in the present case. The Wisconsin statute provides that, after adoption, the parent-child relationship and all rights and legal consequences arising therefrom exist between the adopted child and the adoptive parents. The adopted child and adoptive parents are entitled to inherit from each other in accordance with the laws of descent and distribution. Wis.Stat. § 48.92 (1975). Subsection (2) of the same statute provides that all rights and legal consequences between the adopted child and the natural parents (unless the natural parent is the spouse of the adoptive parent) are cut off. The Wisconsin Supreme Court held that

the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin.

145 N.W.2d at 164. The same intent to substitute the legal rights of the adoptive parents for those of the natural parents is manifested in our statutes. We, therefore, reverse the district court and hold that Tammy Brady, having been adopted prior to the death of her natural grandmother Ruby Holt, is no longer an intestate heir of Ruby Holt.

FEDERICI and RIORDAN, JJ., concur.