723 P.2d 248

**Louie and Colette MARTINEZ, Plaintiffs-Appellees,**

v.

**Tom LOGSDON, Defendant-Appellant.**

**No. 15983.**

Supreme Court of New Mexico.

Aug. 14, 1986.

Briones, Pittard & Odenwald, David Pittard, Farmington, for defendant-appellant.

Violet A.P. Lui, Window Rock, for plaintiffs-appellees.

## OPINION

SOSA, Senior Justice.

Plaintiffs Louie and Collette Martinez brought suit for specific performance of a real estate contract or, alternatively, for damages. Defendant Tom Logsdon counterclaimed for possession of the real estate and damages. The trial court entered an order granting summary judgment for the plaintiffs, including special damages for attorney fees. Defendant files this appeal raising three issues: (1) whether plaintiffs state a cause of action upon which relief can be granted; (2) whether the trial court could properly grant summary judgment in favor of plaintiffs when they did not file a motion under NMSA 1978, Civ.P.Rule 56 (Repl.Pamp.1980); and (3) whether the trial court's award of attorney fees was proper.

**FACTS:**

This case arose out of a series of real estate contracts concerning the purchase of a parcel of land in San Juan County, New Mexico. Defendant Logsdon, on January 30, 1976, sold the property in question to Richard and Julia Mobley for the sum of $7000. The contract was a typical real estate contract requiring that Logsdon make a written demand for payment of any delinquent sums within thirty days before exercising his option to demand all sums due or terminate the contract and reclaim the land. Assignment of the contract was also prohibited unless endorsed by the owners. In 1976, under a similar contract, the Mobleys sold the property to Tom and JoAnn Owen. Finally, in 1978, the plaintiffs purchased the land from the Owens for $9000. All purchasers assumed the prior real estate contracts and some mortgages held on the property. The plaintiffs

have lived on the premises since 1979 and have worked there since 1978, making some improvements to the land. The plaintiffs paid the Owen-Martinez contract in full and were issued a special warranty deed by the Owens.

In January 1983, defendant was informed by the escrow agent for Citizen's Bank that the Mobleys were delinquent on their payments. Pursuant to the Logsdon-Mobley contract, on April 22, 1983, defendant sent a written demand to the Mobleys for payments due and advising them of his intent to forfeit the contract if payments were not submitted. The liability on the Logsdon-Mobley contract was $1,279.23. The escrow agent at Citizen's Bank sent a copy of this notice to the Owens, but not to the plaintiffs, although defendant was aware sometime in April that plaintiffs had some interest in the land. The Mobleys made no further payments.

On or about June 10, 1983, defendant advised the plaintiffs that he claimed a legal right to the land. On June 11, 1983, defendant declared a forfeiture and recorded the special warranty deed from the Mobleys to himself. An affidavit of uncured default and election of termination was filed on June 17, 1983. In July, by letter, defendant advised plaintiffs to leave the premises or pay $150 per month for rent. The plaintiffs refused to pay and on November 22, 1983, filed this suit against defendant for specific performance of the contract.

In maintaining that plaintiffs do not state a cause of action upon which relief can be granted, defendant argues he did not "wrong" plaintiffs; he was not in privity of contract with plaintiffs and therefore not obligated to notify them of any default on the Logsdon-Mobley contract; and that plaintiffs have no right of action against defendant for damages. Furthermore, defendant argues that even if he knew plaintiffs resided on the premises, they, as subpurchasers, were not entitled to notice of the demand for payment. Defendant cites *Campbell v. Kerr,* 95 N.M. 73, 618 P.2d 1237 (1980).

In *Campbell,* we noted that a subpurchaser with notice of the terms of an original contract takes the land subject to such terms, and that an original vendor ordinarily has no duty to notify subpurchasers of a demand and intent to forfeit the contract. *Id.* 95 N.M. at 79, 618 P.2d at 1243. Furthermore, we determined there were no equities in plaintiff's favor which would require the original vendor to notify her of demand for payment. *Campbell* is distinguishable, however.

In *Campbell,* plaintiff had defaulted and also had notice of defendant vendor's written demand to another subpurchaser. Thus, plaintiff had notice of the possibility of a forfeiture and had the opportunity to cure so that her equitable rights in the property would not be defeated. Here, by contrast, plaintiffs were not in default. They had paid the full amount of the purchase price under their contract with the Owens and were not aware of the demand on the Mobleys. In the instant case, unlike in *Campbell,* the equities are in the plaintiffs' favor. Plaintiffs are on the "right side of the coin." *Wyrsch v. Milke,* 92 N.M. 217, 222, 585 P.2d 1098, 1103 (Ct.App. 1978).

■ Moreover, defendant had constructive notice in April 1983, before he declared forfeiture, that plaintiffs had some interest in the property. As stated above, defendant maintains that his knowledge is irrelevant. We disagree. The court correctly considered whether defendant had notice of plaintiffs' claim to the property. This case is similar to *Ex parte Robinson,* 244 Ala. 313, 13 So.2d 402 (1943). In *Robinson,* the court found that petitioner was not merely a subpurchaser, but was in privity of contract with defendant, because defendant was on notice that the vendee would be subdividing the property to other purchasers and had agreed to deed the land to vendee or subpurchasers upon the payment of $75. In that case, petitioner did not allege defendant had notice by contract but only constructive notice by possession. The court, however, attached little significance to whether defendant had actual no-

tice by contract or constructive notice by petitioner's possession. Instead, the court found equitable circumstances precluded a forfeiture because it would be contrary to "fair dealing and good conscience" to permit defendant, with notice of petitioner's right to the property, to take it from her with all the improvements when petitioner, as a subpurchaser, was willing to pay the amount specified in the original purchase. *Robinson*, 244 Ala. at 317, 13 So.2d at 405. "Where a vendor * * * receives part of the proceeds paid by a subpurchaser in possession under a subcontract, equity will render a decree that will do equity to all parties." 92 C.J.S. *Vendor & Purchaser* § 314 at 203 (1955). Under these circumstances, equity will prevent a party having knowledge of another's rights from defeating such rights. *Wyrsch*, 92 N.M. at 221, 585 P.2d at 1102.

The defendant, nevertheless, maintains that contracts which result in a forfeiture that the parties have agreed upon will be enforced in a court of law, as well as a court of equity. It is well-settled that forfeiture provisions are enforceable, "absent unfairness which shocks the conscience of the court." *Bishop v. Beecher*, 67 N.M. 339, 343, 355 P.2d 277, 280 (1960). This court has applied the following equitable considerations in determining whether to relieve a forfeiture: the amount of money already paid; the period of possession of the realty; the market value of the real property at the time of default compared to the original sales price; and the rental potential and value of the real property. *Russell v. Richards*, 103 N.M. 48, 50, 702 P.2d 993, 995 (1985).

After reviewing the pleadings, exhibits, answers to interrogatories and admissions, and the parties' written arguments, the court found that plaintiffs were entitled to summary judgment as a matter of law because the equitable circumstances surrounding this case precluded defendant from exercising his right to terminate the contract. The court found that plaintiffs had paid virtually all the purchase price and had made "considerable improvements on the property exceeding the purchase price of the unimproved land." Defendant argues that these equitable considerations are still in dispute. We disagree.

█ In this case, plaintiffs lived and worked on the property for approximately five years before forfeiture was declared. It is undisputed that $1,273.23 is the remaining balance owed to defendant under the Logsdon-Mobley contract. Furthermore, plaintiffs not only fully performed under their contract with the Owens, but were also willing and able to pay the specified amount in the original contract. Plaintiffs had tendered $1,273.23 to the court. Plaintiffs have also shown that they have made considerable improvements to the land: a septic tank, mobile home set-up, skirting, water pump, electrical pole, fence, tool shed, etc. Defendant concedes that these improvements were made to the property, but disputes their value. In our opinion, plaintiffs have made a prima facie showing that there is no genuine issue as to a material fact; defendant, to defeat a motion for summary judgment, must submit more than a bare assertion that an issue of fact exists. *See Southern Union Gas Co. v. Briner Rust Proofing Co.*, 65 N.M. 32, 40, 331 P.2d 531, 536 (1958). Under these circumstances, to permit defendant to terminate the contract, gain title to the property, and retain all payments made, would result in an "unfairness which shocks the conscience of the court." *Eiferle v. Toppino*, 90 N.M. 469, 470, 565 P.2d 340, 341 (1977).

█ Defendant also contends that plaintiffs' failure to move for summary judgment under Rule 56 precluded the trial court from granting summary judgment in their favor. The trial court granted summary judgment for plaintiffs based on the pleadings, exhibits, answers to interrogatories and admissions, and the parties' written arguments. The plaintiffs did not file a separate motion for summary judgment with the court. The court found, however, that plaintiffs, in their response to the defendant's motion for summary judgment, had submitted their own cross-motion for

summary judgment. There was no error in this finding. Furthermore, even if the plaintiffs had failed to move for summary judgment, the court would not be barred from granting summary judgment in their favor because there were no material factual issues in dispute. *See Moore v. Georgeson,* 679 P.2d 1099, 1102 (Colo.App. 1983); *Brummett v. Ediger,* 106 Idaho 724, 682 P.2d 1271 (1984); *Juker v. American Livestock Insurance Co.,* 102 Idaho 644, 637 P.2d 792 (1981). *See also Boggs v. Anderson,* 72 N.M. 136, 381 P.2d 419 (1963) (summary judgment was given sua sponte by the court). Defendant argues that he was prejudiced by having to speculate whether plaintiffs were arguing a Rule 56 motion. This argument is made despite defendant's reply to the plaintiffs' response, indicating that he was well aware that plaintiffs were arguing their entitlement to summary judgment. Defendant was not prejudiced by any lack of notice.

Finally, the defendant argues that the trial court erred in awarding $406 in attorney fees to plaintiffs. Attorney fees are not recoverable absent statutory or case law authority. *Martinez v. Martinez,* 101 N.M. 88, 678 P.2d 1163 (1984). Plaintiffs argue that the attorney fees in this case are supported by case law, citing *McCoy v. Alsup,* 94 N.M. 255, 609 P.2d 337 (Ct.App.1980). *McCoy* discussed only the award of special damages; attorney fees were not an issue. In *Gregg v. Gardner,* 73 N.M. 347, 388 P.2d 68 (1963), this Court noted that attorney fees have been approved in rare instances. This case does not fall into any of the exceptions to the general rule. *See Id.* at 360, 388 P.2d at 77–78.

For the foregoing reasons, the judgment of the trial court is affirmed in all respects, except for the special damage award to plaintiffs for attorney fees, which portion is reversed.

IT IS SO ORDERED.

FEDERICI, and WALTERS, JJ., concur.