884 P.2d 817

**Steven Ray ALDRIDGE, a minor, By and Through his guardian ad litem, Doris ALDRIDGE, Plaintiff–Appellant,**

v.

**Marjorie MIMS, Personal Representative of the Estate of Chad Mims, deceased, Defendant–Appellee.**

No. 14794.

Court of Appeals of New Mexico.

Aug. 22, 1994.

Certiorari Denied
Sept. 30, 1994.

Patsy D. Reinard, Socorro, for plaintiff-appellant.

John C. Wheeler, Truth or Consequences, for defendant-appellee.

## OPINION

BLACK, Judge.

Born out of wedlock, Steven Aldridge (Child) was adopted in 1978 by his maternal grandparents, but consent to the adoption was not obtained from his natural father. The maternal grandmother attested that the adoption petition did not contain any reference to the alleged natural father because he was very violent, and consequently the family was afraid to approach him either for consent to adopt or to ask him to provide support for his child. When Child's alleged natural father died intestate in 1992, Child filed a claim of heirship and a separate suit to establish paternity. The Estate moved to dismiss Child's claim of heirship and paternity suit, and the district court granted the motions to dismiss in both actions. Child appeals both dismissals, and we consolidated the cases on appeal. We affirm.

### I. HEIRSHIP

In dismissing the claim of heirship, the district court held, inter alia:

1. STEVEN RAY ALDRIDGE is precluded from making this claim by reason of his adoption by RAY D. ALDRIDGE and DORIS MARIE ALDRIDGE under the final decree of adoption entered in cause number SA–77–00007 of the Seventh Judicial District of New Mexico on March 3, 1978, said adoption having been sufficient and complete in all respects under the law of New Mexico at such time; and

2. An adoptive child in New Mexico is precluded from inheriting from the estate of a natural father even if paternity of the father is established after the adoption[.]

We conclude that both of these district court holdings correctly state the law.

Child's argument is that he should be able to prove Decedent's paternity so that he can inherit from both his natural parents as well as his adoptive parents. Child argues that when the New Mexico Legislature adopted

the Uniform Probate Code (UPC) in 1975 it was "presumed to be aware of all existing caselaw interpreting [NMSA 1978, Section 45–2–109 (Repl.Pamp.1989)] and have intended the same result." Citing *Stark v. Watson*, 359 P.2d 191 (Okla.1961), Child concludes, "[a]ll cases at that time held that Section 2–109 'of the 'UPC did not reveal a legislative intent to destroy the rights of an adopted child to inherit from its natural parents.'"

█ The flaw in this argument is that under the UPC it is the law at the date of parent's death, not that in effect at the time of adoption, which controls.[1] *See In re Estate of Holt*, 95 N.M. 412, 413, 622 P.2d 1032, 1033 (1981); *In re Estate of Mooney*, 395 So.2d 608, 609 (Fla.Dist.Ct.App.1981). At the time of the alleged father's death in 1992, the New Mexico courts had already established that, under the UPC, an adopted child inherits through the adoptive, not the natural, parents.

The New Mexico Supreme Court interpreted Section 45–2–109 in *In re Estate of Holt*. In rejecting the attempt of a child, who had been adopted by her stepfather, to inherit from her paternal grandmother, who died intestate, our Supreme Court stated:

> The clear meaning of Section 45–2–109 is that an adoption severs the legal rights and privileges between the adopted child and the natural parents. From the point of adoption on, the adopted child belongs to the adoptive parents as if he or she had been their natural child, with the same rights of a natural child, *all to the exclusion of the natural parents.*

95 N.M. at 414, 622 P.2d at 1034; *see also In re Estate of Shehady*, 83 N.M. 311, 491 P.2d 528 (1971); Joan H. Hollinger, et al., 2 *Adoption Law and Practice* § 12–A.32 (Joan H. Hollinger ed. 1993) (adoptee does not inherit from natural relative under Section 45–2–109).

Child next urges us to, in essence, overrule *Holt*. Not only are we not at liberty to overrule recent Supreme Court precedent, *State v. Wilson*, 116 N.M. 793, 795–96, 867 P.2d 1175, 1177–78 (1994), but additionally we believe the *Holt* Court followed the ac-

cepted interpretation of UPC Section 2–109, *see, e.g.,* Cathy J. Jones, *Stepparent Adoption and Inheritance: A Suggested Revision of Uniform Probate Code Section 2–109*, 8 W.New Eng.L.Rev. 53, 53–54 (1986); Jan E. Rein, *Relatives by Blood, Adoption, and Association: Who Should Get What and Why*, 37 Vand.L.Rev. 711, 719–20 (1984) (non-relative adoptions).

## II. *CONSTITUTIONALITY*

█ Child next argues that if the intestate succession statute can be read to divest children who are adopted by their grandparents from the right to inherit from both natural parents, and not so for children adopted by their stepparents, then the statute is unconstitutional as applied. However, Child provides only policy reasons and no legal precedent to support this contention. Issues raised in briefs that are unsupported by legal authority need not be considered. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Moreover, this issue has also been raised under the UPC and has been resolved adversely to Child's position. The Florida Court of Appeals rejected a very similar equal protection challenge to the UPC plan of substituting the adoptive parents for the natural parents, saying:

> Appellant has furnished us with an abundance of statistical information regarding the increase of illegitimacy and the social reasons why § 732.108 [Florida's equivalent of § 45–2–109] should be declared unconstitutional. This argument can best be made before the Legislature which has the obligation to decide the social consequences of legislation. However, the statistics do nothing to convince us that there has been a denial of equal protection. The section simply provides that ·an adopted person is not a lineal descendant of his natural parent. Other provisions in the section provide that he is a lineal descendant of his adopting parents, the consequence of which afford him full and equal protection to inherit from his adoptive parents.

*In re Estate of Donoyan*, 393 So.2d 615, 617 (Fla.Dist.Ct.App.1981); *cf. In re Adoption of Webber*, 116 N.M. 47, 50, 859 P.2d 1074, 1077

---

1. Although it would not affect the outcome here, we note that, effective July 1, 1993, Section 45– 2–109 was amended and became NMSA 1978, Section 45–2–114 (Repl.Pamp.1993).

(Ct.App.) (after expiration of period in which challenge to adoption allowed, adopted child in same legal position as natural child), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993). As in the Florida case, Child's arguments may be appropriate for a debate on public policy in the legislature, but they are an inadequate foundation for a constitutional challenge to the intestacy provisions of the UPC.

### III. *PROCEDURE*

Child argues that the district court followed an improper procedure under SCRA 1986, 1–012 (Repl.1992), for resolving this dispute. Specifically, Child argues he was prejudiced by the district court considering the adoption petition without carefully following the procedure for summary judgment outlined in SCRA 1986, 1–056 (Repl.1992).

On October 9, 1992, the personal representative filed an objection to Child's claim of heirship in the estate case and a motion to dismiss the paternity suit. On December 8, 1992, Child filed a brief arguing "[t]he Motion to Dismiss refers to matters outside the pleadings, to-wit, an adoption case filed in 1977, but does not attach affidavits with 'sworn or certified copies of all papers' referred to as required by [SCRA 1–056(E)]." In response to Child's "challenge," the personal representative filed a brief with an attached endorsed copy of the 1978 final decree in the adoption case. The personal representative also filed an affidavit attesting that, upon information and belief, the final decree was a true copy of that "on file with the District Court of Sierra County, New Mexico IN THE MATTER OF THE ADOPTION OF STEVEN RAY ALDRIDGE, a minor, No. SA–77–00007."

On December 24, 1992, Child responded with an affidavit from his maternal grandmother and adoptive mother admitting that the maternal grandparents had filed a petition to adopt Child when he was six months old. On January 26, 1993, Child filed a supplementary response. Rather than attacking the legality of the adoption, however, Child argued that while he "should not be required to set aside his adoption and thus the protection and medical benefits it is affording him, he is willing to do so unless the court accepts his first argument, that the adoption has no effect [sic] upon his right to inherit from his natural father."

The district court did not enter judgment until February 23, 1993, more than two months after the personal representative had filed the certified adoption decree and almost one month after Child had responded with his grandmother and adoptive mother's affidavit. Nonetheless, Child argues, "it was unfair surprise for the court to go beyond the estate's brief and decide an issue upon law not argued by the parties, with no right to respond once the court made its decision." We disagree.

■ SCRA 1–056(D)(2) allows a party opposing a motion for summary judgment fifteen days to file a response. Since the personal representative filed copies of the adoption petition and decree on December 18, and Child responded with both a brief and an affidavit on December 24, we do not understand how Child was surprised or prejudiced. The requirement of notice and the opportunity to respond under SCRA 1–056 are designed to protect the rights of the party opposing the motion. When the opposing party has reasonable notice of the issues underlying a summary judgment, together with the opportunity to be heard, and makes no specific allegation of prejudice at that time, summary judgment is an appropriate procedure. *See Santistevan v. Centinel Bank,* 96 N.M. 730, 732, 634 P.2d 1282, 1284 (1981); *see also Electric Supply Co. v. United States Fidelity & Guar. Co.,* 79 N.M. 722, 725, 449 P.2d 324, 327 (1969). The fact the personal representative initially moved to dismiss under SCRA 1–012 does not limit the trial court's authority to grant summary judgment. *Cf. Martinez v. Logsdon,* 104 N.M. 479, 482–83, 723 P.2d 248, 251–52 (1986) (court not barred from granting summary judgment by absence of motion).

### IV. *ADOPTION*

■ Child argues that the 1978 adoption is void because the 1979 United States Supreme Court decision in *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), "declared all state statutes which required an illegitimate child's mother, but not his father, to consent to his adoption, to be unconstitutional as violative of the equal protection clause." This is a

misreading of *Caban.* *Caban* recognized a natural father's interest in the adoption of his children only where he has acknowledged his paternity and developed a relationship with the child. 441 U.S. at 392–93, 99 S.Ct. at 1768–69; Martha W. Atwater, Comment, *A Modern–Day Solomon's Dilemma: What of the Unwed Father's Rights?*, 66 U.Det.L.Rev. 267, 275 (1989); *see also In re Adoption of Doe,* 89 N.M. 606, 620, 555 P.2d 906, 920 (Ct.App.) (father's consent to the adoption of illegitimate child not required where father abandoned child), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976). Moreover, Child's adoption decree was entered in March 1978; *Caban* was not filed until more than a year later in April 1979. Even if Child's alleged father had acknowledged and established a relationship with Child, *Caban* has not been applied retroactively. *See In re Adoption of Jessica XX,* 430 N.E.2d 896, 898–99, 446 N.Y.S.2d 20, 430 N.E.2d 896 (N.Y.1981).

The New Mexico adoption statutes in effect at the time of Child's 1978 adoption may be found at NMSA 1953, Sections 22–2–20 to –46 (Supp.1975). Section 22–2–33(C) read:

Subject to the disposition of an appeal, after one [1] year from the date of entry of a judgment of adoption, the judgment of adoption *cannot be questioned by any person,* including the petitioner, *in any manner, upon any ground,* including fraud, misrepresentation or failure to give any required notice.

(Emphasis added.) The statute was emphatic and inclusive in limiting both the persons and grounds on which an adoption could be set aside. Thus, it may be reasonably assumed that the legislature chose a policy that would impose permanence on the adoptive relationship. We conclude that Child's adoption was final and its validity cannot now be attacked.

### V. *PATERNITY*

 Finally, Child argues that even as a lawfully adopted child he may proceed with a paternity suit against his natural father's estate. Paternity suits are not recognized as a common-law cause of action in New Mexico. *See State ex rel. Human Servs. v. Aguirre,* 110 N.M. 528, 530, 797 P.2d 317, 319 (Ct.App. 1990). Moreover, the primary purpose of paternity suits is to insure the putative father meets his obligation to help support the child. *Id.* As previously noted, the legal effect of an order of adoption is to cause the adopted child to be treated as if it were the natural child of the adoptive parents and thus terminate the natural parent's duty to support such child. *See In re Estate of Holt,* 95 N.M. at 414, 622 P.2d at 1034. It therefore follows that if the adoption of a child is approved prior to the commencement of a paternity suit, the paternity suit will not lie. *Cf. Charles v. James,* 56 Misc.2d 1056, 290 N.Y.S.2d 993, 995–96 (Fam.Ct.1968) (paternity suit by mother does not lie where adoption of child was approved prior to the commencement of such action). We also affirm the dismissal of the Child's paternity suit.

### VI. *CONCLUSION*

The district court properly considered the adoption decree and correctly concluded Child is legally precluded from challenging his adoption at this late date. Since a lawfully adopted child does not inherit from its natural parents, the district court's order dismissing the claim of heirship is affirmed, and since a lawfully adopted child does not have a right to support from his natural parents, the district court's order dismissing the paternity suit is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and APODACA, J., concur.